**Michael Anthony HERRING,
Defendant Below,
Appellant,**

v.

**STATE of Delaware, Plaintiff
. Below, Appellee.**

No. 71, 2001.

Supreme Court of Delaware.

Submitted: Sept. 11, 2001.

Decided: Jan. 8, 2002.

Anthony A. Figliola, Jr., Esquire, of Figliola & Facciolo, Wilmington, Delaware for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for the State.

Before HOLLAND, BERGER, and STEELE, Justices.

HOLLAND, Justice:

The defendant-appellant, Michael Anthony Herring, was indicted on a charge of Robbery in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony and Conspiracy in the Second Degree. Following a jury trial in the Superior Court, Herring was convicted of Robbery in the First Degree. He was acquitted of the remaining charges.

On appeal Herring argues that the Superior Court erred in refusing to instruct the jury on the lesser included offense of Theft. He also argues that the Superior Court improperly commented on the evidence in its initial and supplemental instructions to the jury. We have concluded that the actions by the Superior Court were correct, as a matter of law.

### Facts[1]

Herring's conviction related to events occurring on March 12, 2000. A pizza delivery man, Luis Campos, was dispatched by Season's Pizza to make a delivery at the Harbor Club Apartments. At the apartment building, Herring let Campos in and followed him up the steps. As Campos was about to knock on the apartment door where he thought the order had come from, a second man, Francisco Torres, attacked him with a knife. Torres held a knife to Campos' throat and took his money. Herring and another individual took Campos' food order and all three fled.

Detective Domenick Gregory of the New Castle County police had been assigned to investigate a series of robberies of pizza

---

1. The facts are not in dispute and are taken, in part, from the State's Answering Brief.

delivery men in the area. He had developed Torres as a suspect. Detective Gregory showed Campos a photo line-up containing Torres' picture. Campos identified Torres as the man who had held a knife to his throat and taken his money. Following Torres arrest, Torres implicated Herring in the March 12th crime. In a police interview on March 30, 2000, Herring admitted his own involvement in the crime.

At trial, Herring testified that on March 12th he accepted a ride home from Torres. Torres told him there was something he had to do first and drove him to the Harbor Club Apartments. They walked into an apartment building and waited about ten minutes before Herring asked Torres why they were there. Torres replied that he was going to rob a pizza delivery man but did not tell Herring that he had a knife. Herring told Torres that he did not want to be involved and left.

As Herring walked out the exterior door of the apartment building, the delivery man entered. Herring testified that he then heard a loud commotion, re-entered the building, went up the stairs and saw Torres holding a knife to the pizza delivery man's throat. Herring testified that he grabbed two bottles of soda from the floor, comprising part of the food order Campos was delivering, and ran out to Torres' car. He and Torres then fled. Herring testified that Torres had offered him $21 for his share of the robbery but he refused to accept it. Herring also stated that he left the two bottles of soda in Torres' car.

### Jury Instruction—Lesser Included Offense

■ Herring was charged with accomplice liability for robbery, in accordance with Section 271.[2] Herring's first argument on appeal is that Section 274[3] required the Superior Court to instruct the jury regarding the lesser included offense of Theft. Section 274 provides the following:

> When, pursuant to § 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.

According to Herring, Section 274 entitled him to a jury instruction on all lesser included offenses. Herring's argument confuses two distinct legal principles. The first legal principle is that an *offense* can be divided into *degrees*. The second legal principle is that lesser included offenses frequently extend beyond being only a degree of the charged offense.

Herring was charged with accomplice liability for robbery. In Herring's case, the use of the word "offense" in Section 271 and Section 274 is reconciled by construing it to mean "robbery."[4] Robbery is an offense that is divided into degrees. In accordance with Section 274, the Superior Court properly instructed the jury to distinguish between Herring's accomplice liability for the specific degree of robbery: first or second. We note, however, that the use of the word "degree" in the title of a crime is not always the end of the inquiry pursuant to the mandate of Section 274.[5]

Although Theft is a lesser included offense to Robbery in the First Degree, it is

2. DEL. CODE ANN. tit. 11, § 271 (2001).

3. DEL. CODE ANN. tit. 11, § 274 (2001).

4. *Chance v. State,* 685 A.2d 351, 357, 359 (Del.1996).

5. In *Chance,* the offense was homicide. In that case, we held that although the word "degree" is not used in either title, the crimes of manslaughter and criminal negligent homi-

not a *degree* of robbery.[6] Herring was not entitled to have the jury instructed on a lesser included offense that did not constitute a degree of robbery, unless there was a rational evidentiary foundation in the record for such an instruction on the basis of *either* the principal's conduct (Torres) or the independent conduct of the alleged accomplice (Herring). The record reflects that, based upon Herring's own testimony, there was no rational basis for an instruction on the lesser included offense of Theft.[7] Theft, by definition, is when a person "takes, exercises control over or obtains property of another person" *without force* but with the intent to deprive that person of the property.[8] Herring admitted taking part of the food order from the victim, Campos, who was being held at knifepoint by Torres. Such an act could only constitute a degree of robbery.

### *Jury Instructions—Delaware Constitution*

■ Herring's second argument is that the Superior Court improperly commented on the evidence in its initial and supplemental instructions to the jury. Herring argues that both the trial court's initial and supplemental jury instructions violated Article IV, Section Nineteen of the Delaware Constitution. In its initial charge, the Superior Court instructed the jury on elements of both Robbery in the First and Second Degree. The trial judge included language in the Robbery in the Second Degree instruction, over Herring's

objection, that Herring could be accountable for the display of a deadly weapon during the commission of a crime if he "actively participated in the crime when the weapon was displayed."

During its deliberations, the jury sent a note to the trial judge questioning the use of accomplice liability for determining Herring's "accountability" for the display of the deadly weapon in the Robbery in the Second Degree instruction. After conferring with counsel, the trial judge delivered supplemental instructions to the jury for their guidance in assessing Herring's culpability as an accomplice for committing either Robbery in the First or Second Degree. The trial judge's complete supplemental instructions to the jury provided:

In order to establish Robbery First Degree you must find first Mr. Torres, who is the other individual with the knife, committed the crime of Robbery First Degree.

Second, Mr. Herring aided or assisted him in committing that crime.

And third, that Mr. Herring was either aware the weapon was to be used, or actively participated in the crime when the weapon was displayed.

■ Article IV, Section Nineteen of the Delaware Constitution states that "[j]udges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law." Section Nineteen was adopted as a

---

cide both constituted "degrees" of homicide. *Id.* at 359 & n. 7.

**6.** Appendix B of the 1973 *Delaware Criminal Code with Commentary* sets forth the following as illustrative of included offenses of Robbery in the First Degree:

§ 832 Robbery in the first degree
　§ 831 Robbery in the second degree
　§ 841 Theft
　§ 602 Menacing
　§ 601 Offensive Touching

§ 531 Attempt to commit any of the aforementioned crimes
Particular fact situations, however, may not lend themselves to the analysis above. DELAWARE CRIMINAL CODE WITH COMMENTARY 501 (1973) (Appendix B).

**7.** *Capano v. State,* 781 A.2d 556, 628 (Del. 2001).

**8.** DEL. CODE ANN. tit. 11, § 841(a) (2001).

new provision in the 1897 Constitution to ensure that judges confined themselves to making determinations of law and leaving juries to determine the facts.[9] The purpose of the provision was to protect the province of the jury on factual issues.[10] It was not, however, the intention of the framers to impose any restraint on the proper province of the trial judge in either passing upon the legal admissibility of evidence or in instructing the jury on the law.[11]

Trial judges may properly combine a statement regarding a fact in issue with a declaration of law.[12] Trial judges may not, however, comment on the facts in their charge to the jury since only juries are entitled to judge the facts.[13] An improper comment or charge as to "matters of fact" is an expression by the court, directly or indirectly, that conveys to the jury "the court's estimation of the truth, falsity or weight of testimony in relation to a matter at issue." [14]

It is not entirely improper for a trial judge to explain "the legal significance which the law attaches to a particular factual finding." [15] For example, when giving a limiting instruction pursuant to Delaware Rule of Evidence 105, a trial judge must identify the fact at issue and explain the legal prohibition against using certain evidence that is used to establish the contested fact for any other purpose. Similarly, a trial judge may properly state a fact at issue and declare the legal consequences of evidence that is missing in a criminal proceeding.[16]

We conclude that the initial and supplemental jury instructions, when viewed as a whole and in context, were not impermissible comments on the evidence. In the initial jury instructions, the trial judge properly charged the jury on the elements of both Robbery in the First and Second Degree. In the supplemental instructions, the trial judge merely clarified the factual elements required to support a conviction for each degree of robbery.

The trial judge made an accurate statement of the law and explained the legal significance the law attached to particular facts. The trial judge neither commented on the weight of the evidence nor the credibility of the witnesses. Thus, we hold that the Superior Court's instructions did not violate Article IV, Section Nineteen of the Delaware Constitution.[17]

### Conclusion

The judgments of the Superior Court are affirmed.

9. *Lunnon v. State*, 710 A.2d 197, 201 (Del. 1998) (citing 3 DEBATES AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF THE STATE OF DELAWARE 1729–30 (1958)).

10. *Id.* The purpose of a similar provision in the Tennessee Constitution was interpreted as putting a stop to the English practice of "summing up," which consisted of telling the jury what the prospective litigants had proven at trial. *Id.*

11. *Id.* (citing *Patten v. Town of Auburn*, 41 Wash. 644, 84 P. 594, 595 (1906)).

12. *See id.*

13. *Storey v. Camper*, 401 A.2d 458, 462–65 (Del.1979).

14. *State v. Halko*, 193 A.2d 817, 829 (Del.Super.Ct.1963) (citing *State v. Carey*, 178 A. 877, 882 (Del. Oyer & Term.1935)), *aff'd* 204 A.2d 628 (Del.1964).

15. *Hall v. State*, 473 A.2d 352, 356 (Del.1984).

16. *Lolly v. State*, 611 A.2d 956, 959–61 (Del. 1992).

17. *Lunnon*, 710 A.2d at 201.