**James ALLEN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 665, 2007.

Supreme Court of Delaware.

Submitted: Oct. 29, 2008.
Decided: Feb. 17, 2009.

---

**16.** *Hicks,* 913 A.2d at 1192.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.* at 1193.

**20.** *Id.*

Court Below—Superior Court of the State of Delaware, in and for New Castle County, I.D. No. 0208020748.

James J. Haley, Jr., Esquire, Ferrara, Haley & Collins, Wilmington, Delaware, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice, for the majority.

The defendant-appellant, James Allen, appeals his Superior Court conviction on various charges arising from three separate incidents. Allen raises five arguments on appeal. First, Allen contends that the Superior Court erred by refusing his request to instruct the jury pursuant to Title 11, section 274 of the Delaware Code.

Second, he argues that the Superior Court committed reversible error by limiting his attorney's cross-examination of co-defendant Issiah Howard on prior crimes. Third, Allen claims that the Superior Court erred when it refused to grant his request for a mistrial. Fourth, he alleges that the Superior Court committed plain error by failing to follow proper procedure before submitting the charge of Kidnapping in the Second Degree to the jury. Finally, Allen argues that the Superior Court erred when it granted the State's Motion to Declare Defendant a Habitual Offender.

We have concluded that all of Allen's convictions must be reversed because of the Superior Court's failure to instruct the jury in accordance with section 274. Therefore, this matter is remanded for further proceedings in accordance with this opinion.

### Procedural History

Allen was indicted on numerous charges arising from three separate incidents, which took place on May 31, 2002, August 12, 2002, and August 27, 2002.[1] Following a jury trial, Allen was found guilty on several of the charges and he was declared a habitual offender by the Superior Court. He then appealed to this Court, which held that "the trial court erred when it admitted into evidence a non-testifying co-defendant's guilty plea agreement under the circumstances of this case and that this error require[d] a new trial." [2]

We remanded the case for a new trial and a jury found Allen guilty of all charges except Attempted Robbery in the First Degree and Conspiracy in the Second Degree as to the August 27, 2002, incident.

Subsequently, the State filed a Motion to Declare Defendant a Habitual Offender, which the Superior Court granted. The Superior Court sentenced him accordingly and this appeal followed.

### Facts

Allen and co-defendants Howard and McCray were indicted on twenty charges arising from three separate burglary incidents in New Castle County during the summer of 2002. The State alleged that on the evening of May 31, 2002, Allen, Howard and McCray went to a Wilmington Savings Fund Society ("WSFS") Bank branch in Newark in Allen's Volvo. McCray, armed with a handgun, climbed to the roof of the building. Howard stood watch behind the bank while Allen did the same in front. Each man had a walkie-talkie to communicate with the others. A short time later, McCray radioed Howard that he needed help cutting the hole in the roof. Howard joined McCray on the roof, leaving Allen to guard the front of the building. Once the two men successfully cut a hole in the roof and dropped a rope in the hole, they waited until the bank opened the next morning.

Early the next morning, Allen called Howard and told him he was returning to his home to exchange his Volvo for a Jeep Cherokee he also owned. After he returned, Allen radioed McCray and Howard to tell them that the bank was being opened. McCray and Howard descended the rope into the bank and accosted one of the two female employees inside. McCray ran into the vault and grabbed as much cash as he could until Allen radioed that it was time to leave the bank. Howard and McCray climbed back up the rope to the

---

1. Along with Allen, Issiah Howard ("Howard") and Kevin McCray ("McCray") were indicted in connection with the three burglary incidents.

2. *Allen v. State*, 878 A.2d 447, 449 (Del.2005).

roof, jumped off the roof onto a dumpster and got into Allen's Jeep. The three men fled the scene of the robbery in the vehicle. When the men arrived at Allen's home, they changed clothes, divided the $39,000 taken from the bank and parted ways. Howard and McCray drove back to New Jersey. The indictment charged each of the three men with six offenses in connection with this incident: (1) Robbery in the First Degree; (2) Burglary in the Second Degree; (3) Conspiracy in the Second Degree; (4) Criminal Mischief; (5) Possession of a Firearm During the Commission of a Felony; and (6) Wearing a Disguise During the Commission of a Felony.

The State further alleged that on August 12, 2002, the trio reunited to rob an EZ Check Cashing outlet. The three men again met at Allen's house, got into one of Allen's cars and cased the store from a Chinese restaurant across the street. They returned to Allen's home, loaded up his Jeep Cherokee with tools and waited until nightfall. That evening, the three men resumed their original duties— McCray climbed to the roof to cut the hole, Howard stood as a look-out behind the store and Allen watched the front. McCray needed assistance again and Howard joined him on the roof again.

A short time later, one of the men on the roof accidentally dropped something through the hole into the store and set off the alarm. McCray and Howard jumped off the roof and ran to Allen's car. They got in the car and watched the police arrive and soon depart, apparently finding nothing of note. Still nervous, the group returned to Allen's house. After a while, McCray decided to return to the store. Once he gave Howard and Allen the "all clear," they returned to the store as well. McCray ascended to the roof of the store again and waited for an employee of the store to deactivate the alarm in the morning. When the manager arrived, she found McCray in the back of the store brandishing a gun. After he forced the manager to open the store's safe, McCray ordered her into the restroom and handcuffed her to a railing. Then, McCray radioed his partners and told them that he had robbed the store successfully and was ready to leave. The three men returned to Allen's home and split the $12,000 in cash. Howard and McCray drove back to New Jersey. The indictment charged the three men with seven offenses in connection with this incident: (1) Robbery in the First Degree; (2) Burglary in the Second Degree; (3) Conspiracy in the Second Degree; (4) Criminal Mischief; (5) Possession of a Firearm During the Commission of a Felony; (6) Wearing a Disguise During the Commission of a Felony; and (7) Kidnapping in the Second Degree.

Finally, the State alleged that on August 26, 2002, the trio attempted to rob the Wal–Mart store in New Castle. Their first attempt to cut through the roof failed. Undeterred, they returned the next night with a blow torch. As McCray was cutting a hole in the roof, however, Allen radioed that an employee had come out of the store and was looking up at the roof. Soon after, three Wal–Mart employees climbed onto the roof with flashlights to find the source of the noise. As the Wal–Mart employees approached Howard and McCray, McCray pulled out a handgun and ordered one of the employees to the ground. Howard took off running, with McCray a short distance behind. McCray and Howard jumped into Allen's Jeep Cherokee and drove away. At Allen's home, McCray and Howard changed their clothes and started to drive back to New Jersey, but were arrested by the Delaware State Police. The indictment charged the three men with seven offenses in connection with this incident: (1) Attempted Rob-

bery in the First Degree; (2) Attempted Burglary in the Second Degree; (3) Conspiracy in the Second Degree; (4) Criminal Mischief; (5) Aggravated Menacing; (6) Possession of a Firearm During the Commission of a Felony; and (7) Possession of Burglar's Tools.

Howard and McCray pled guilty to reduced charges prior to trial. Allen pled not guilty. A five-day jury trial commenced on July 30, 2003. The jury found Allen guilty on the charges relating to the attempted burglary of the Wal–Mart store on August 27, but the jury was unable to reach a verdict on the remaining charges pertaining to the WSFS Bank incident on May 31 and the EZ Check Cashing incident on August 12. The trial judge granted the State's motion to declare Allen a habitual offender and sentenced Allen on February 20, 2004.

**3.** Del.Code Ann. tit. 11, § 832 (2008).

**4.** Del.Code Ann. tit. 11, § 825 (2008).

**5.** Del.Code Ann. tit. 11, § 602(b) (2008). The dissent asserts that Aggravated Menacing is not a crime that is divided into degrees. However, the "menacing" statute is divided into "degrees." The misdemeanor of Menacing in title 11, section 602(a) is elevated to the felony of Aggravated Menacing in title 11, section 602(b) when what appears to be a deadly weapon is displayed. Allen was charged with the enhanced crime of Aggravated Menacing as an accomplice because the principal possessed a weapon.

**6.** *Compare* Del.Code Ann. tit. 11, § 831(a) ("A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with intent to: (a) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft."), *with* Del.Code Ann. tit. 11, § 832(a) ("A person is guilty of robbery in the

### Section 274 Instruction

■ In its opening statement, the State told the jury that its theory of the case against Allen was that of accomplice liability:

> And at the end of this case, the State is going to ask you to find this guy guilty as an accomplice for the EZ Check Cashing store, the WSFS Bank, and the Wal–Mart robbery. And the State will prove those to you beyond a reasonable doubt.

In the case *sub judice*, the main charges against Allen, as an accomplice, were divided into degrees, *e.g.*, Robbery in the First Degree,[3] Burglary in the Second Degree[4] and Aggravated Menacing,[5] etc. The aggravating factor increasing the degree of each offense was the use of a gun.[6]

first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or immediate flight therefrom, the person or another participant in the crime: ... (2) Displays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon...."). *Compare* Del.Code Ann. tit. 11, § 825(a)(2) ("A person is guilty of burglary in the second degree when the person knowingly enters or remains unlawfully: (2) In a building and when, in effecting entry or while in the building or in immediate flight therefrom, the person or another participant in the crime: a. is armed with explosives or a deadly weapon...."), *with* Del.Code Ann. tit. 11, § 824 ("A person is guilty of burglary in the third degree when the person knowingly enters or remains unlawfully in a building with intent to commit a crime therein."). *Compare* Del.Code Ann. tit. 11, § 602(a) ("A person is guilty of menacing when by some movement of body or any instrument the person intentionally places another person in fear of imminent physical injury."), *with* Del. Code Ann. tit. 11, § 602(b) ("A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury.").

■ Title 11, section 274 of the Delaware Code provides that:

> When, pursuant to [the accomplice liability statute], 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.[7]

Allen requested a section 274 instruction so that the jury could make the statutorily required individualized determination regarding his "own culpable mental state" and his "own accountability for an aggravating fact or circumstance," *i.e.*, the use of a gun.[8] The trial judge denied his request. Allen contends that, "[g]iven that the State's theory against Allen was that he was strictly an accomplice in the three incidents," the Superior Court erred by denying his requested jury instruction under title 11, section 274. We review *de novo* a trial court's refusal to give a requested jury instruction on any defense theory.[9]

Delaware's statutory accomplice liability law has abandoned the common-law distinctions between principals and accessories and has established a two-step process for liability under companion statutes. First, title 11, section 271 provides generally, that a person is guilty of an offense committed by another person if an appropriate degree of complicity in the offense can be proved.[10] Second, title 11, section 274 provides that, despite being criminally liable for an offense under section 271, the *degree* of the offense for which the codefendants are guilty depends upon each codefendant's own respective "culpable mental state" and "accountability for an aggravating fact or circumstance."[11] For example, while two people may be found criminally liable for murder under section 271, under an instruction that is required by section 274, one party may be convicted of first-degree murder, while the other's mental culpability makes him guilty only of second-degree murder.[12]

In support of his request for a section 274 instruction, Allen relies on this Court's decision in *Herring v. State*.[13] In *Herring*, the defendant was charged with accomplice liability for robbery in accordance with section 271 and asserted on appeal that he was also entitled to a section 274 instruction on all lesser included offenses.[14] A panel of this Court noted that the Superior Court "properly instructed the jury to distinguish between [the defendant's] accomplice liability for the specific degree of robbery: first or second."[15] That statement in *Herring*, however, is inconsistent with our earlier panel holding in *Coleman*[16]

7. Del.Code Ann. tit. 11, § 274 (2008).

8. *Id.*

9. *Wright v. State*, 953 A.2d 144, 148 (Del. 2008); *Bentley v. State*, 930 A.2d 866, 875 (Del.2007); *Lunnon v. State*, 710 A.2d 197, 199 (Del.1998).

10. Del.Code Ann. tit. 11, § 271; *see also Chance v. State*, 685 A.2d 351, 354–56 (Del. 1996); Del.Crim.Code with Commentary 48 (1973).

11. Del.Code Ann. tit. 11, § 274; *see also Chance v. State*, 685 A.2d at 356–58.

12. Del.Crim.Code with Commentary 52–53 (1973).

13. *Herring v. State*, 805 A.2d 872 (Del.2002).

14. *Herring v. State*, 805 A.2d at 874.

15. *Id.*

16. *Coleman v. State*, 2000 WL 1840511 (Del. Supr.).

and our later panel holdings in *Johnson*,[17] *Richardson*[18] and *Scott*.[19]

We are deciding Allen's case *en Banc* to reconcile our prior inconsistent panel decisions.[20] Although section 274 includes language relating to both culpable mental states *and aggravating circumstances*, in the past several of our panel decisions have only focused on the mental state of the alleged accomplice to a robbery and not on the accomplice's "accountability for an aggravating fact or circumstance." Consequently, we have previously held that section 274 only applies when the underlying offenses can be divided into degrees with different mental states for each degree.[21] Therefore, we have concluded that a lesser-included offense instruction would be appropriate if the jury is required to distinguish between degrees of homicide,[22] but not robbery.[23] Indeed, on numerous occasions we have explicitly stated that there is no basis for a section 274 instruction when the offense in question is robbery, because "the offenses of first degree robbery and second degree robbery require proof of the same mental state." [24]

Section 274 of the Delaware Criminal Code is based on section 20.15 of the New York Penal Law.[25] Although section 274 is based upon the New York statute, it was not followed verbatim. Unlike Delaware's section 274, New York's statute includes an *exception*, which precludes application of the statute if other parts of the criminal code "expressly provide[ ]" otherwise:

> *Except as otherwise expressly provided in this chapter, when*, pursuant to [the accomplice liability statute], two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of such degree as is compatible with his own culpable mental state and with his own accountability for an aggravating fact or circumstance.[26]

**17.** *Johnson v. State*, 2008 WL 1778241 (Del. Supr.).

**18.** *Richardson v. State*, 2007 WL 2111092 (Del.Supr.).

**19.** *Scott v. State*, 2008 WL 4717162, at *1 (Del.Supr.).

**20.** Del.Supr. Ct. R. 4(d) ("[I]n the event that there is a reasonable likelihood that a prior decision of the Court may be modified or overruled, the presiding Justice of the panel, if not the Chief Justice, shall so notify the Chief Justice ... in writing, and the case shall thereupon be scheduled on a priority basis for rehearing and determination by the Court en Banc without further briefing unless ordered by the Court....").

**21.** *Chance v. State* 685 A.2d 351, 361 (Del. 1996); *Coleman v. State*, 2000 WL 1840511, at *1.

**22.** *Compare* Del.Code Ann. tit. 11, § 636 (first degree murder requires that the defendant acted "intentionally"), *with* Del.Code Ann. tit. 11, § 635 (second degree murder requires that the defendant acted "recklessly" or with "depraved indifference"),

**23.** *Compare* Del.Code Ann. tit. 11, § 832 (first degree robbery requires that the defendant acted "intentionally"), *with* Del.Code Ann. tit. 11, § 831 (second degree robbery also requires that the defendant acted "intentionally").

**24.** *Scott v. State*, 2008 WL 4717162, at *1 (Del.Supr.) (emphasis added); *Johnson v. State*, 2008 WL 1778241, at *2 (Del.Supr.); *accord Richardson v. State*, 2007 WL 2111092, at *2 (Del.Supr.); *Coleman v. State*, 2000 WL 1840511, at *1 (Del.Supr.).

**25.** *Chance v. State*, 685 A.2d at 355 (describing how Delaware's section 274 is based on New York's section 20.15 and does not have a counterpart in the Model Penal Code). Three other states have statutes that substantially mirror this provision in New York and Delaware: Arkansas, Hawaii and Missouri. *Id.*

**26.** N.Y. Penal Law § 20.15 (McKinney 2008) (emphasis added).

New York's companion statute to its accomplice liability statute has three major components: (1) the compatibility with the defendant's own "culpable mental state;" (2) "accountability for an aggravating fact or circumstance;" and (3) the condition precedent, "except as otherwise expressly provided." The New York Practice Series for criminal law describes this statute as the "most obscure and least understood provision" of the accomplice-liability provisions.[27] In fact, it cited another practice series for the accurateness of its statement, that "how [this statute] manifests itself for particular crimes and circumstances remains to be determined by the courts" [28] because of the inconsistency of when the statute is applied and the different ways in which courts apply it when they choose to do so.[29]

The New York statute defines robbery in the first degree as "forcibly steal[ing] property" and "in the course of the commission of the crime or immediate flight therefrom, [the defendant] *or another participant"*: cause serious physical injury; is armed with a deadly weapon; uses or threatens the immediate use of a dangerous instrument; or displays what appears to be a firearm.[30] The companion statute to New York's accomplice liability statute is predicated upon the phrase: "except as otherwise expressly provided." Therefore, the language in the companion statute to New York's accomplice liability statute, "except as otherwise expressly provided," precludes the need for a jury instruction on the lesser-included offenses of robbery since that "exception" reflects the New York legislature's intention for all robbery participants to be guilty of first degree robbery if any of the participants used a dangerous weapon.[31] The New York Practice commentary explained its construction with an example: "if two people commit a robbery together, both are guilty of robbery in the first degree even if only one of them uses or threatens the use of a dangerous instrument." [32]

■ The substance of Delaware's statute defining robbery is similar to the New York statute.[33] However, section 274,

27. 6 N.Y. Prac. *New York Criminal Law* § 1:15 (2009).

28. *Id.* (quoting Donnino, *Practice Commentary to Penal Law* § 20.00, in 39 McKinney's Cons. Laws of N.Y. 116 (2004)).

29. *Id.*

30. *See* N.Y. Penal Law § 160.15 (emphasis added).

31. *See* N.Y. Penal Law § 160.15. This is supported by *People v. Cradle*, which rejected a defendant's argument that the court *sua sponte* should have instructed the jury on the differing-degrees statute because the defendant's argument was "unsupported by either statute or case law" since the co-defendant had threatened the victim with a dangerous instrument. *People v. Cradle*, 176 A.D.2d 212, 574 N.Y.S.2d 335, 336 (1991). The court did not, however, go into any specific review of the statutory language in order to reach that conclusion, perhaps because the issue had not been preserved for appellate review. *Id.* It is also possible to conclude that New York would not require such an instruction when the only inference a reasonable jury could draw is that the defendant had to be aware of the factual circumstance, such as the use of a weapon that elevated the robbery offense. *See People v. Cruz*, 309 A.D.2d 564, 765 N.Y.S.2d 508, 508–09 (2003).

32. 6 N.Y. Prac. *New York Criminal Law* § 1:15; *see also* N.Y. Penal Law § 160.15 (defining robbery in the first degree as "forcibly steal[ing] property" and "in the course of the commission of the crime or immediate flight therefrom, he *or another participant* . . . causes serious physical injury . . . or . . . is armed with a deadly weapon; or . . . uses or threatens the immediate use of a dangerous instrument; or . . . displays what appears to be a firearm . . . ." (emphasis added)).

33. *Id.; accord* Del.Code Ann. tit. 11, § 832 (2008) ("A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and

which is Delaware's companion statute to its accomplice liability statute, only has two components because it contains no qualifying language like New York's "except as otherwise expressly provided."[34] Consequently, in Delaware, there is no exception to the unambiguous language in section 274 that provides when an offense is divided into degrees, each participant is only guilty for the degree of a crime that is commensurate with their own mental culpability *and* their own accountability for an aggravating circumstance.

■ Allen argues that, consistent with our holding in *Johnson v. State*,[35] the jury is required to make an individualized determination regarding *both* his mental state *and* his culpability for any aggravating fact or circumstance. We agree. In *Johnson*, we stated:

Section 274 incorporates Section 271 by reference. The use of the word "offense" in Section 271 and the use of that same word in Section 274 must be construed *in pari materia*. Accordingly, Sections 271 and 274 require the jury to undertake a two-part analysis when the State proceeds on a theory of accomplice liability.

First, the jury must decide whether the State has established that the defendant was an accomplice to a criminal offense committed by another person. . . .

Second, if a defendant is found liable for a criminal offense under a theory of accomplice liability, and if that offense is

divided into degrees, then the jury must determine what degree of the offense the defendant committed. That conclusion must be based on an *individualized* determination of the defendant's mental state *and culpability for any aggravating fact* or circumstances. This inquiry implicates the provisions of Section 274.[36]

■ In Delaware, section 274 contemplates the possibility that an accomplice defendant, who was wholly unaware of another participant's intent to use a gun in a robbery, could not be convicted of Robbery in the First Degree. The proper role of a jury in considering the liability of a defendant charged as an accomplice to a robbery was succinctly summarized by the New Jersey Superior Court:

[W]hen considering the guilt of a defendant charged as an accomplice to an armed robbery a jury must distinguish between whether the defendant shared his partner's purpose to commit the robbery with a deadly weapon or shared only his purpose to commit the robbery. If the jury determines that the defendant shared his partner's purpose to commit the robbery but not his purpose to use a deadly weapon, then the jury may find the defendant guilty of a second-degree robbery, but not a first-degree armed robbery.[37]

In Allen's case, the unambiguous language of section 274 mandated a lesser-included instruction to Allen's jury for the charges of Robbery in the First Degree,

---

when, in the course of the commission of the crime or of immediate flight therefrom, the person *or another participant in the crime* . . . [d]isplays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon . . . ." (emphasis added)).

34. Del.Code Ann. tit. 11, § 274 (2008).

35. *Johnson v. State*, 711 A.2d 18 (Del.1998) (unrelated to the previously-cited *Johnson* case from 2008).

36. *Johnson v. State*, 711 A.2d at 29–30 (emphasis added).

37. *State v. Hammock*, 214 N.J.Super. 320, 519 A.2d 364, 365 (1986).

Burglary in the Second Degree and Aggravated Menacing. Each of those offenses is a crime that is divided into degrees. Assuming arguendo that Allen's mental state as an accomplice was the same as the principal perpetrator of each act of robbery, burglary and menacing, the difference in the degree of each offense depended on Allen's "own accountability for an aggravating fact or circumstance," i.e., the gun. Therefore, as to each of the charged offenses that is divided into degrees, we hold that the Superior Court's failure to comply with the unambiguous statutory mandate of section 274 to instruct the jury to determine Allen's individual "mental state" and "accountability for an aggravating fact or circumstance" constituted reversible error. To the extent that our prior panel decisions are inconsistent with this holding, they are overruled.[38]

### Cross–Examination of Howard

■ Allen next contends that the Superior Court committed reversible error by refusing to allow defense counsel to cross-examine Issiah Howard about other criminal conduct Howard had engaged in with Kevin McCray. We review a trial judge's evidentiary rulings for an abuse of discretion.[39]

When defense counsel attempted to cross-examine Howard about his criminal history with McCray, the trial court ruled that counsel was asking questions about other crimes outside the scope permitted by Delaware Rule of Evidence 609.[40] The trial judge explained that defense counsel was "asking him questions about other criminal conduct, and the problem [was] that the rule limits this to attacking the credibility of a witness on felon[ies] or misdemeanors of dishonesty."[41]

Allen contends in his opening brief that "Howard was the only witness who connected Allen, an alleged accomplice, to Howard's and McCray's roof-cutting activities. Hence the nature and depth of the relationship between Howard and McCray, in comparison to their relationship with Allen, was critical."[42] Allen argues that the Superior Court violated Delaware Rules of Evidence 608(b) and 616 because, without information as to Howard's and McCray's past, the jury would not have understood "that Howard and McCray may have combined in a longstanding part-

---

**38.** See Del.Supr. Ct. R. 4; *Johnson v. State,* 2008 WL 1778241 (Del.Supr.); *Richardson v. State,* 2007 WL 2111092 (Del.Supr.); *Coleman v. State,* 2000 WL 1840511 (Del.Supr.).

**39.** *Manna v. State,* 945 A.2d 1149, 1153 (Del. 2008) (citing *Pope v. State,* 632 A.2d 73, 78–79 (Del.1993)); *Page v. State,* 934 A.2d 891, 899 (Del.2007) (citing *Smith v. State,* 913 A.2d 1197, 1228 (Del.2006)).

**40.** D.R.E. 609. Delaware Rule of Evidence 609 states, in pertinent part:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evi-

dence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment. D.R.E. 609(a).

**41.** The court further explained to defense counsel regarding his examination of Howard: "You've gone through his felony conviction. You've gone through this case and you've gone through the subsequent one in federal court. And if you want, you can ask him general questions, but you can't ask him about his other criminal conduct."

**42.** Allen further explained: "If Howard was a long-standing partner in crime with McCray, having participated in a string of burglaries and robberies with him over the years, and in comparison knew Allen much less well, then Howard might have had no hesitation in exaggerating Allen's alleged involvement."

nership of thieving and dishonesty in New Jersey and had come to Delaware to exploit a mutual acquaintance (Allen)."[43] As a result, Allen claims that the trial court prevented the jury from making a critical, fully-informed judgment about Howard's credibility and potential bias against Allen.

In *Wright v. State*, we explained that while the accused has the right to confront the witnesses against him, the right to cross-examination is not absolute.[44] "The trial judge is not required to allow cross-examination on topics of marginal or minimal relevance solely on the conjecture that bias or prejudice might be disclosed."[45]

 Here, Allen's strategy was to establish that Howard implicated Allen in the scheme in order to get a deal for his friend McCray. The trial judge permitted defense counsel to cross-examine Howard on this theory, but limited the cross-examination to the subject of "acquaintance and questions like that." The trial judge concluded that specific questions regarding Howard's criminal past would have been outside the scope of Delaware Rule of Evidence 609. During trial, defense counsel did not argue that Allen was entitled to cross-examine Howard in this manner under Delaware Rule of Evidence 608(b) or 616. Accordingly, the Superior Court did not abuse its discretion in limiting Allen's cross-examination of Howard.

### Prosecutor's Comments in Closing Argument

 Allen next contends that the Superior Court erred when it did not grant his motion for a mistrial "because of argument by the State designed to evoke unfair speculation and prejudice against him." We review the Superior Court's denial of a motion for a mistrial for abuse of discretion.[46] "We use such a deferential standard of review because 'the Superior Court is in a better position to measure the risk of prejudice from events at trial.'"[47] We will reverse the Superior Court's decision to deny a mistrial "only if that denial was based on unreasonable or capricious grounds."[48] Further, when dealing with potential prosecutorial misconduct, "[i]f defense counsel raised a timely and pertinent objection to prosecutorial misconduct at trial, or if the trial judge intervened and

---

43. D.R.E. 608(b); D.R.E. 616. Delaware Rule of Evidence 608(b) states:

 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. D.R.E. 608(b).

 Delaware Rule of Evidence 616 states: "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice or interest of the witness for or against any party to the case is admissible." D.R.E. 616.

44. *Wright v. State*, 513 A.2d 1310, 1314 (Del. 1986).

45. *Id.*

46. *Chambers v. State*, 930 A.2d 904, 909 (Del. 2007) (citing *Taylor v. State*, 827 A.2d 24, 27 (Del.2003)); *Guy v. State*, 913 A.2d 558, 565 (Del.2006) (citing *Flowers v. State*, 858 A.2d 328, 332 (Del.2004)).

47. *Guy v. State*, 913 A.2d at 565 (quoting *Ney v. State*, 1998 WL 382645, at *1 (Del.Supr.)).

48. *Id.; see also Justice v. State*, 947 A.2d 1097, 1100 (Del.2008) ("A mistrial is appropriate only when there are no meaningful or practical alternatives to that remedy or the ends of public justice would otherwise be defeated.").

considered the issue *sua sponte*, we essentially review for 'harmless error.' "[49]

Defense counsel objected to the prosecutor's comments during closing argument and rebuttal regarding Allen's financial condition and to the prosecutor's comments in rebuttal referring to Allen as a "philanderer." Allen contends that the prosecutor improperly "encouraged the jury to speculate about the circumstances of Allen's marriage and finances." In addition, Allen argues that the prosecutor "play[ed] on the potential to create jealousy and moral disdain toward Allen (a black man) from a largely white jury." The prosecutor argued this to the jury:

Does he need the money? Absolutely. Why? Because he is a stock boy at the ShopRite. And there is nothing wrong with that. But when you look at being a stock boy at the ShopRite, owning a 2000 Cadillac Escalade, a 1998 Volvo and 1999 Jeep, and you can look at [the] record, that's a lot of money to be putting out. And who does he say he sells the Jeep to, coincidentally? Kevin McCray, the known bank robber who has no job and can get locked up at any minute and never pay that 14 grand back that he owes.

\* \* \*

He called Issiah Howard a philanderer. Does the guy that's out chasing two women around behind his wife's back, who doesn't seem to make enough money to equate to his means, is he a philanderer? You decide.

Allen argues these comments implicitly introduced the element of race into the trial. We have held previously that when the prosecution injects the issue of race into a criminal proceeding, it violates the right of due process guaranteed to all defendants by the United States and Delaware Constitutions and demands the convictions be reversed.[50] Here, however, the prosecutor neither expressly injected race into the proceedings nor insinuated that the only way an African–American man could afford Allen's lifestyle was to steal. Rather, the prosecutor's message was premised solely on Allen's economic means: that he could not afford his three cars and new home because he was a stock boy at ShopRite and therefore had a motive to commit robbery.

Allen argues the prosecutor's comment referring to him as "a philanderer" provoked the jury's moral disdain.[51] However, the prosecutor's reference was not improper because Allen "opened the door." Allen injected the issue of philandering into the case when he testified that McCray was a "philandering guy." There was also evidence that supported an inference that Allen was pursuing a relationship with two women despite being married. Therefore, although the prosecutor misspoke in referring to Howard instead of McCray, the portion of the comment refer-

**49.** *Justice v. State*, 947 A.2d at 1100 (citing *Baker v. State*, 906 A.2d 139, 148 (Del.2006)).

**50.** *Weddington v. State*, 545 A.2d 607, 614–15 (Del.1988); *see also* Del. Const. art. I, § 7. *Cf.* Am. Bar. Assoc., Standards for Criminal Justice: Prosecution and Defense Function § 3–5.8(c) (3d ed. 1993) ("The prosecutor should not make arguments calculated to appeal to the prejudices of the jury."); Am. Bar. Assoc., Standards Relating to the Prosecution Function and the Defense Function § 5.8 cmt.

c (Approved Draft 1971) ("Arguments which rely upon racial, religious, ethnic, political, economic or other prejudices of the jurors introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law.").

**51.** "Philander" means "to engage in casual love affairs." Webster's II New Collegiate Dictionary 825 (3d ed.2001).

ring to Allen as a philanderer was not improper.

Allen argues that the prosecutor's statements regarding his financial condition invited unfair speculation. The State responds in its answering brief that "Allen was living a lifestyle quite beyond the reach of an average 'overnight stocking clerk.' The prosecutor's suggestion that Allen may have had a financial motive to participate in the robbery—to pay for his lifestyle—was, therefore, entirely proper."

■ We have previously declined to decide the issue of whether a prosecutor's reference to a defendant's financial status is permissible to demonstrate a motive to commit robbery.[52] In general, however, use of poverty or financial status as evidence to show guilt in a robbery case is not admissible.[53] For those courts adopting such a rule, the issue is one of fairness:

> It is fundamental to our conception of a fair trial that equality of treatment must be afforded to all without regard to differences in social status or economic condition. In a society which cherishes the ideal of equal justice for all and seeks to accord the equal protection of the laws to all those who are accused of

crime, it would be difficult to accept any other view.[54]

■ Furthermore, evidence that a defendant is poor or in debt generally has little probative value.[55] Although a defendant's lack of money is logically connected with a crime involving financial gain, to admit such evidence, even when a purpose of pecuniary gain is not in issue, "would prove too much against too many." [56] "Lack of money gives a person an interest in having more. But so does desire for money, without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty." [57]

Even if such evidence is relevant, it often carries a danger of unfair prejudice.[58] According to John Henry Wigmore's *Evidence in Trials at Common Law:*

> The *lack of money* by A might be relevant enough to show the probability of A's desiring to *commit* a *crime* in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as

---

**52.** *Smith v. State,* 913 A.2d at 1238, n. 90.

**53.** *E.g., State v. Reid,* 213 S.W.3d 792, 814–15 (Tenn.2006); *People v. Harris,* 37 Cal.4th 310, 33 Cal.Rptr.3d 509, 118 P.3d 545, 570 (2005); *Commonwealth v. Haight,* 514 Pa. 438, 525 A.2d 1199, 1201 (1987) (Papadakos, J. concurring); *People v. Henderson,* 408 Mich. 56, 289 N.W.2d 376, 380–81 (1980); *State v. Mathis,* 47 N.J. 455, 221 A.2d 529, 537–38 (1966); *accord U.S. ex rel. Mertz v. New Jersey,* 423 F.2d 537, 541–42 (3rd Cir.1970) (applying New Jersey law); *see also* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 392 (Little, Brown, & Co., James H. Chadbourn ed.1979).

**54.** *U.S. ex rel. Mertz v. New Jersey,* 423 F.2d at 541.

**55.** *See* D.R.E. 403.

**56.** *State v. Mathis,* 221 A.2d at 538. *But see, e.g.,* Del.Code Ann. tit. 11, § 4209(e)(1)(*o*) (providing that an aggravating circumstance for murder in the first degree is that "the murder was committed for pecuniary gain"); *Ploof v. State,* 856 A.2d 539 (Del.2004) (evidence of life insurance policy admitted to show murder committed for pecuniary gain).

**57.** *U.S. v. Mitchell,* 172 F.3d 1104, 1108–09 (9th Cir.1999).

**58.** D.R.E. 403; *State v. Reid,* 213 S.W.3d at 814; *U.S. ex rel. Mertz v. New Jersey,* 423 F.2d at 541–42; *see also* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 392.

evidence of the graver crimes, particularly those of violence.[59]

For these reasons, in analyzing the permissibility of a prosecutor's reference to a defendant's financial condition as motive to commit a crime, the trial judge must carefully weigh the probative value of the defendant's economic status against the danger of unfair prejudice resulting from such a reference. While we acknowledge that in some instances, evidence regarding a defendant's poverty or indebtedness is relevant and the unfair prejudice arising from the reference is mitigated,[60] this is precisely the reason for requiring a balancing under Delaware Rule of Evidence 403.[61]

Here, the evidence that Allen owned a Jeep, Volvo and Cadillac was clearly admissible because the three vehicles were central to the State's case. The evidence regarding whether Allen owned his home was also somewhat relevant given the home's alleged use as a base of operations for the three men. In closing and rebuttal, however, the prosecutor implicitly compared Allen's presumably small remuneration from his employment—working as a "stock boy at the ShopRite"—to his relatively costly possessions in order to establish motive.

The prosecutor suggested to the jury that Allen could not afford his three vehicles and new home because he was a stock boy at ShopRite and therefore committed robbery in order to support his lifestyle. This was an unreasonable inference from the evidence in the record, calculated to appeal to the jury's economic prejudices and mislead the jury as to the inferences it may draw.[62] The prosecutor has a duty to avoid arguments that rely on economic prejudices of the jurors because they "introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law."[63]

Accordingly, we hold that the prosecutor's statements regarding Allen's financial condition were improper. Since Allen will receive a new trial, we need not decide whether those comments were adequately remedied by the trial judge's instructions.

---

**59.** 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 392.

**60.** For example, many courts that have considered this type of evidence have determined that evidence of lack of funds prior to the time of the crime charged is admissible if it is coupled with proof of sudden possession of wealth immediately afterward. *E.g., State v. Reid,* 213 S.W.3d at 814; *U.S. v. Bensimon,* 172 F.3d 1121, 1129–30 (9th Cir.1999); *U.S. ex rel. Mertz v. New Jersey,* 423 F.2d at 541; *see also* 1A John Henry Wigmore, *Evidence in Trials at Common Law* § 32, ex. 3 (Tillers rev.1983).

**61.** We note that at trial when defense counsel objected to the State's line of questioning on this matter, the prosecutor explained that he intended to use Allen's ownership of his home and three vehicles to establish he was living beyond his means and therefore had a motive to commit robbery. Although the ruling admitting the evidence was not raised by Allen on this appeal, a balancing would have been appropriate under D.R.E. 403.

**62.** See Am. Bar Assoc., Standards for Criminal Justice: Prosecution and Defense Function § 3–5.8(a), (c) (providing that in closing argument to the jury: (a) "The prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw." (c) "The prosecutor should not make arguments calculated to appeal to the prejudices of the jury.").

**63.** *Weddington v. State,* 545 A.2d 607, 611 (Del.1988) (citing Am. Bar. Assoc., Standards Relating to the Prosecution Function and the Defense Function § 5.8 cmt.c (Approved Draft 1971)).

Improper comments of this kind should not be repeated at Allen's next trial.

### Kidnapping Instruction Deficient

■■■ Allen contends that the trial judge erred by failing to follow the process required by *Weber v. State* before submitting the charge of Kidnapping in the Second Degree to the jury.[64] He contends that "[t]he perpetrator's sole intent appear[ed] to have been nothing more than to complete the robbery efficiently[,]" and that "[i]t would be manifestly unjust to allow a conviction based on a charge lacking independent criminal intent to remain of record." The State concedes that a *Weber* instruction should have been given. We agree.

In *Weber*, we held that "in every case when a defendant is charged with kidnapping in conjunction with an underlying crime, a specific instruction requiring the jury to find that the movement and/or restraint is independent of and not incidental to the underlying crime is mandatory."[65] Because of the serious consequences of convicting a defendant for detaining a victim independent of the underlying offense, we also held in *Web-*er that "before the jury is instructed to consider whether the movement and/or restraint in the alleged kidnapping is independent of or is incidental to an underlying crime, the trial judge must determine if the facts presented in the State's case warrant the submission of that issue to the jury at all." [66]

In *Raiford v. State*, we explained that the *Weber* instruction is not discretionary but is required to assure the defendant a fair trial.[67] We further explained in *Raiford*, however, that the "failure to give a *Weber* instruction may not always rise to the level of plain error." [68] For example, in *Sanders v. State*, we found that the facts established that there was substantially more interference with the victim's liberty than was ordinarily incident to the underlying crimes involved.[69] Thus, we concluded that "although the *Weber* instruction is mandatory and should have been given, [the defendant's] right to a fair trial was not compromised, and his conviction will not be overturned." [70]

Because Allen's defense counsel failed to object at trial, we review this argument for plain error.[71] In order for an error to be

---

64. *Weber v. State*, 547 A.2d 948 (Del.1988).

65. *Id.* at 959.

66. *Id.* If convicted for kidnapping in the first degree, the defendant faces a potential life sentence. *See* Del.Code Ann. tit. 11, § 783A; Del.Code Ann. tit. 11, § 4205(b)(1).

67. *Raiford v. State*, 1995 WL 466393, at *1 (Del.Supr.).

68. *Id.* (citing *Coleman v. State*, 562 A.2d 1171 (Del.1989), *cert. denied*, 493 U.S. 1027, 110 S.Ct. 736, 107 L.Ed.2d 754 (1990)).

69. *Sanders v. State*, 1995 WL 264532 (Del. Supr.).

70. *Id.* at *2; *see also Coleman v. State*, 562 A.2d 1171, 1180 (Del.1989) (finding that the facts of the case so clearly established that the restraint imposed was a substantial interference with the victim's liberty in excess of the restraint ordinarily incident to the underlying crime that the failure to give a *Weber* instruction was not plain and reversible error).

71. Del.Supr. Ct. R. 8; *Sanders v. State*, 1995 WL 264532, at *2 (Del.Supr.) ("Sanders did not object to the kidnapping instructions at trial; accordingly we review the omission of the *Weber* instruction under the plain error standard."); *see Hackett v. State*, 888 A.2d 1143, 1145 (Del.2005) ("Failure to make an objection at trial constitutes a waiver of the defendant's right to raise that issue on appeal unless the error is plain.") (citing *Capano v. State*, 781 A.2d 556, 653 (Del.2001)); *Hardin v. State*, 840 A.2d 1217, 1219 (Del.2003) ("In the absence of a timely objection at trial, any claim of error is reviewed on appeal by this Court for plain error."); *see also* D.R.E. 103.

plain, the error must affect substantial rights of the defendant and therefore have an effect on the trial's outcome.[72] Although we hold that the Superior Court should have given a *Weber* instruction to the jury, we need not decide whether the failure to do so constituted plain error since Allen's convictions are being reversed on other grounds. A proper *Weber* instruction should be given at Allen's next trial.

### Habitual Offender Hearing

Finally, Allen contends that the Superior Court erred by granting the State's motion to declare him a habitual offender without a separate hearing. Because Allen is entitled to a new trial, this issue is moot.

### Conclusion

The multiple criminal charges against Allen were inextricably intertwined. The Superior Court's failure to give a section 274 instruction with regard to those offenses that are divided into degrees "undermined the ability of the jury to 'intelligently perform its duty in returning a verdict' "[73] and requires a reversal of all the judgments of conviction. This matter is remanded for a new trial in accordance with this opinion.

RIDGELY, Justice, dissenting, with whom BERGER, Justice, joins.

Section 274 of Title 11 provides:

When, pursuant to § 271 of this title, 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance.[74]

The majority finds in Section 274 an unambiguous statutory mandate to instruct the jury to determine Allen's individual "mental state" and "accountability for an aggravating fact or circumstance" on the charges of Robbery in the First Degree, Burglary in the Second Degree, and Aggravated Menacing. We respectfully disagree and dissent from that holding.[75] We concur with the balance of the Opinion and would affirm the Superior Court's decision because the remaining errors were harmless beyond a reasonable doubt.[76]

Section 274 does not apply to the charge of Aggravated Menacing. Aggravated Menacing is not divided into degrees, a necessary predicate for the application of

72. *Keyser v. State*, 893 A.2d 956, 959 (Del. 2006).

73. *See Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (quoting *Storey v. Castner*, 314 A.2d 187, 194 (Del.1973)).

74. 11 *Del. C.* § 274

75. We also note that the majority opinion has not defined what would make Allen "accountable" under Section 274.

76. The prosecutor's statements referring Allen's financial status were improper, but harmless because they were promptly and adequately remedied by the court and neither caused the jury to ignore its role as factfinder and final arbiter of witness credibility nor brought into doubt the integrity of the trial as a whole. *See Justice v. State*, 947 A.2d 1097, 1101 (Del.2008); *Hughes v. State*, 437 A.2d 559, 571 (Del.1981). The trial court's failure to give a *Weber* instruction on the kidnapping charge did not rise to a plain error because the evidence presented to the jury established that there was substantially more interference with the victim's liberty that was ordinarily incident to the underlying crimes involved. *See Raiford v. State*, 667 A.2d 1320 (Del.1995). The lack of a separate hearing on Allen's habitual offender status following his second trial was harmless because he previously had been given a separate hearing and been declared an habitual offender following his first trial.

Section 274. In *Herring v. State*,[77] the defendant argued that he was entitled to a Section 274 instruction on all lesser included offenses of robbery, specifically theft. This Court rejected the argument because theft was not a degree of robbery and there was no evidentiary foundation in the record for an instruction on that lesser included offense. Similarly, Aggravated Menacing is a lesser included offense of Robbery in the First Degree, but it is not a *degree* of robbery. Section 274 does not apply to Aggravated Menacing for that reason.

Nor does Section 274 apply to the charge of Robbery in the First Degree. While our criminal code does divide the crime of robbery into two degrees, the culpable mental state for both is intentional conduct. We have so held in four cases which found Section 274 inapplicable.[78] These cases were correctly decided.

What is novel about Allen's argument is the focus on the phrase "own accountability for an aggravating fact or circumstance." If this accountability is to be determined as a matter of fact, then the jury has a responsibility to decide it.[79] But when the accountability for an aggravating fact or circumstance already has been determined by the General Assembly as a matter of law, the jury has no role other than to decide whether the fact or circumstance has been proven beyond a reasonable doubt.

The Robbery in the First Degree statute provides, in pertinent part, that "[a] person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person *or another participant in the crime* . . . [d]isplays what appears to be a deadly weapon." [80] The General Assembly expressly provided that Allen is accountable for the display of a deadly weapon by another participant in the crime. Put another way, proof that Allen had knowledge that another participant in the crime would possess or display a gun is not required.

The source of Delaware's robbery statutes is New York's Penal Law §§ 160.00, .05, and .15.[81] The statutes

---

77. 805 A.2d 872, 874 (Del.2002)

78. *Scott v. State*, 962 A.2d 257, 2008 WL 4717162, at *1 (Del. Oct.28, 2008) (Table) ("[T]he offenses of first degree robbery and second degree robbery require proof of the same mental state. Accordingly, there is no basis for the [§ 274] instruction. . . ."); *Johnson v. State*, 947 A.2d 1121, 2008 WL 1778241, at *2 (Del.2008) (Table) ("[T]he offenses of first degree robbery and second degree robbery require proof of the same mental state. Accordingly, there was no basis for the [§ 274] instruction. . . ."); *Richardson v. State*, 931 A.2d 437, 2007 WL 2111092, at *2 (Del.2007) (Table) ("First degree robbery, second degree robbery and attempted murder all require intentional conduct. Because the underlying offenses in this case all require the same *mens rea*, the requested [§ 274] instruction was properly denied."); *Coleman v. State*, 765 A.2d 950, 2000 WL 1840511 (Del.2000) (Table) ("First degree robbery and second de-

gree robbery require the same *mens rea* of intentional conduct. Therefore, § 274 is not applicable.").

79. DEL. CONST. art. IV, § 19.

80. 11 *Del. C.* § 832(a).

81. In *Chance v. State*, 685 A.2d 351, 355 (Del. 1996), we recognized the connection between certain provisions of the Delaware Criminal Code and the Model Penal Code and New York's Penal Law by using Appendix C to the PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY (1967). Appendix C provides a "Table of Sources of Proposed Delaware Criminal Code" "offered to assist the Bench and Bar in interpreting the provisions of the Code." The appendix indicates that New York Penal Law §§ 160.00, .05, .15 were the source of our current robbery statutes. *Id.* at app. C; *see also* DELAWARE CRIMINAL CODE WITH COMMENTARY § 101 (1973).

are substantially similar and New York's interpretation of its robbery statutes should be afforded great weight in our own interpretation of Sections 831 and 832 of Title 11.[82] New York has interpreted its Robbery in the First Degree statute as imposing strict liability on defendants for aggravating circumstances. In *People v. Miller*, the New York Court of Appeals explained:

> [T]he only result proscribed by the robbery statutes is the forcible taking of another's property and it is this act that the law proscribes regardless of the attendant circumstances. It is the robber's intent—or "conscious objective"—to permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act that is prohibited by law. However, when an attendant circumstance to the robbery is the causing of serious physical injury to a nonparticipant, Penal Law § 160.15(1) imposes strict liability.[83]

More recently, in interpreting the statute and building upon *Miller*, the New York Supreme Court, Appellate Division found that:

> Where a defendant's guilt of robbery in the first degree "is predicated upon the forcible taking of property, coupled with the aggravating factor of any participant in the crime being armed with a

deadly weapon ... the defendant's knowledge that an accomplice was armed with a deadly weapon is not an element of robbery in the first degree." In such a case, "lack of proof of the defendant's knowledge that a [deadly weapon] would be used was immaterial." Accordingly, the court correctly instructed the jurors that if they found, beyond a reasonable doubt, that the defendant "had the mental culpability required for the commission of the crime of robbery, which is forcibly stealing," and that "another person involved in this crime of robbery use[d] or threaten[ed] the immediate use of a dangerous instrument," they should find the defendant guilty, "even if [the defendant] did not know a dangerous instrument was to be used." [84]

The rationale of these cases is persuasive.

The same analysis applies to the charge of Burglary in the Second Degree. The statute also imposes accountability upon a defendant when "another participant in the crime" is armed with a deadly weapon.[85]

The majority seeks to distinguish the relevance of the New York cases by focusing on the absence of "except as otherwise provided by statute" language in the New York equivalent of Section 274. The New York decisions did not rely upon that language. Moreover, the phrase "Except as otherwise expressly provided in this chapter" is merely an express reaffirmance of

**82.** *Compare* 11 *Del. C.* § 831 *with* N.Y. Penal Law § 160.15. The drafters "expect[ed] that case law in other jurisdictions using similar sources will be helpful aids in construing the proposed provisions." PROPOSED DELAWARE CRIMINAL CODE WITH COMMENTARY app. c (1967).

**83.** *People v. Miller*, 87 N.Y.2d 211, 638 N.Y.S.2d 577, 661 N.E.2d 1358, 1362–63 (1995).

**84.** *People v. Murad*, 55 A.D.3d 754, 865 N.Y.S.2d 331, 2008 WL 4594101, at *1 (2008) (quoting *People v. Foster*, 33 A.D.3d 814, 826 N.Y.S.2d 288, 289 (2006); *People v. Garcia*, 302 A.D.2d 474, 753 N.Y.S.2d 754, 755 (2003)) (citing *People v. Murdough*, 287 A.D.2d 658, 733 N.Y.S.2d 78 (2001))

**85.** 11 *Del. C.* § 825; *see also* 11 *Del. C.* § 824 (defining the crime of burglary in the third degree).

the maxim of statutory interpretation *generalia specialibus non derogant,* that a specific statute controls the more general to the extent of any conflict. We need no specific language in Section 274 to apply this rule of statutory construction which exists for the purpose of carrying out the intent of the General Assembly. We have done so repeatedly in the past without express language in the statute directing us to do so.[86]

By the express terms of our robbery and burglary statutes, Allen is accountable for the display of a gun by his co-defendant. On that point, there is nothing for a jury to decide except for whether a gun was displayed by Allen or another participant in the crime. An instruction for the jury to do so was included in the charge to the jury. Accordingly, the Superior Court did not err when it refused to give a Section 274 instruction.

We respectfully dissent.

---

[86]. *See, e.g., Clark v. State,* 957 A.2d 1, 2008 WL 3906890, at *5 n. 19 (Del.2008) (Table); *State v. Cook,* 600 A.2d 352, 355 n. 6 (Del. 1991); *Blue Cross & Blue Shield of Del., Inc. v. Elliott,* 449 A.2d 267, 270 (Del.1982).