**Darryl E. DOUGLAS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 315, 2004.

Supreme Court of Delaware.

Submitted: May 18, 2005.

Decided: July 19, 2005.

Carole J. Dunn, Office of the Public Defender, Georgetown, DE, for Appellant/Cross–Appellee.

Kim Ayvazian, Department of Justice, Georgetown, DE, for Appellee/Cross–Appellant.

Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

STEELE, Chief Justice:

A grand jury indicted Darryl E. Douglas for kidnapping, robbery, aggravated menacing, and several counts of possession of a firearm during the commission of a felony. He now appeals a ruling by the Superior Court judge made during trial that he alleges deprived him of a fair trial. During the Superior Court jury trial, the trial judge allowed a State's witness to refresh her recollection on the stand by using notes the prosecutor took during a meeting she and the witness, an employee of the Attorney General's office, had with one of the two alleged victims. The State cross appeals from another ruling made at the conclusion of the State's case when, pointing to the victims' easy means of escape, the trial judge *sua sponte* dismissed the kidnapping and related charges. We consider two questions on this appeal by Douglas and cross-appeal by the State: (1) whether the trial judge abused his discretion by allowing the prosecutor to introduce her personal notes to refresh the recollection of a witness about whether a victim was in "fear" of physical injury during the crime; and (2) whether, by failing to focus on the extent to which Douglas applied restraint independent of the underlying robbery, the trial judge erred when he dismissed the kidnapping charges. We answer yes to both questions. Accordingly, we vacate Douglas's aggravated menacing and associated firearms convictions, reverse the trial judge's decision to dismiss the kidnapping and related firearms charges, and order a new trial.

## I.

In August 2003, Douglas entered a convenience store in Millsboro armed with a gun. After ordering the store clerk to empty the cash register, Douglas forced the clerk and a customer at gunpoint into the store's walk-in refrigerator. Once the victims were inside, Douglas barricaded the door with boxes and other nearby items. Although the cooler had two doors, allowing for an easy escape, the victims nonetheless remained inside until Douglas left the store. Authorities later arrested Douglas and charged him with a variety of offenses, including two counts of first-degree kidnapping, first-degree robbery, aggravated menacing, four counts of possession of a firearm during the commission of a felony, and other offenses.

Douglas was tried before a jury in May 2004.[1] At the close of the State's case, Douglas moved for a judgment of acquittal on the aggravated menacing charge. Although the trial judge denied that motion, he *sua sponte* dismissed the two kidnapping and associated PFDCF charges. The jury then convicted Douglas of, among other offenses, first-degree robbery, aggravated menacing, and two counts of PFDCF. Douglas now appeals, claiming that the trial judge abused his discretion when he allowed an Attorney General's employee appearing as a State's witness to refresh her recollection of a victim's interview by referring to notes taken by the prosecutor during the interview and that, even if the prosecutor's notes were admissible, the trial judge erred when he denied Douglas's motion for judgment of acquittal. The State also cross appeals, arguing that the trial judge erred when he dismissed the kidnapping charges *sua sponte* on a theory that the victims' easy means of escape from confinement demonstrated that Douglas had failed to interfere substantially with the victims' liberty.

---

1. *State v. Douglas,* Del.Super., ID No. 0309000027A (May 3, 2004).

## II.

### A.

■ Douglas claims that the trial judge erred when he permitted an Attorney General's employee appearing as a State's witness to refresh her recollection of comments made by one of the victims by referring to the prosecutor's notes taken during an interview of the victim. By allowing the State's witness to refresh her recollection from this source of information at trial, Douglas maintains, the trial judge improperly allowed the prosecutor to vouch for the reliability of her own notes. Although the trial judge did not admit the prosecutor's notes into evidence, his decision to allow them to be used to refresh the witness's recollection constitutes an evidentiary ruling. We therefore review for abuse of discretion.[2]

At trial, one of the victims, Ronald Hill, testified that Douglas pointed the gun at him for a "slight moment," but that he was not "concerned" about his "health."[3] When the State asked him whether he was worried, Hill responded "not necessarily."[4] These responses jeopardized the State's ability to meet its burden of proof on the aggravated menacing charge, which requires proof beyond a reasonable doubt that Douglas's actions had placed Hill in "imminent fear of physical injury." Hill also testified that after the incident, he voluntarily met with the prosecutor and a social worker employed by the Attorney General's office, Laurel Braunstein. Both

Braunstein and the prosecutor kept notes of the session.

On the witness stand, Braunstein sought to consult her notes before testifying to what Hill said at the meeting. After refreshing her recollection, Braunstein testified that Hill's comments indicated he was "scared," but that he seemed "more concerned for the clerk."[5] Braunstein also stated that, based on her own notes, she could not recall that Hill articulated his state of mind during the robbery. Over Douglas's objection, the trial judge then allowed the witness to review the prosecutor's notes. The following exchange then took place:

Q. [Prosecutor] Having reviewed those notes, does it refresh your recollection?

A. [Braunstein] Yes.

Q. Did Mr. Hill articulate what was going through his mind that day?

A. Yes, he did indicate that he thought that this might be his last day.[6]

The prosecutor asked Braunstein no further questions.

■ Under Delaware Rule of Evidence 612, if "a witness uses a writing or object to refresh his memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying."[7] Although nearly any item may be used to refresh a witness's memory,[8] a prosecutor may not continue in a case when the introduction of that evidence would force her to "abandon his [her] role as prosecutor and

2. *See, e.g., Lilly v. State,* 649 A.2d 1055, 1059 (Del.1994).

3. Tr. Trans. A–159.

4. *Id.* at A–160.

5. *Id.* at A–182.

6. *Id.* at A–184.

7. D.R.E. 612(a).

8. *See, e.g.,* 81 Am. Jur. 2D *Witnesses* § 769 (2004) ("Upon laying a proper foundation, a witness may use anything he says will refresh his recollection as to the events to which he testifies.").

become a witness." [9] Because a jury must base its verdict on the strength of the evidence free from the influence of the State's "official position and ... superior access to the facts in forming its opinion," we have recognized the impropriety of allowing prosecutors to personally vouch for the veracity of witness testimony or the reliability of other evidence.[10] Thus, where a prosecutor sought to use his personal notes to refresh the recollection of a witness and by the use of those notes impeach that witness's earlier testimony, we held in *Hughes v. State* that the prosecutor improperly vouched for his notes' reliability.[11]

### B.

■ As recorded by the prosecutor, Hill's interview statement that he feared at the time of the robbery that it might be "his last day" supported an essential element of Douglas's indictment for aggravated menacing. Notably, this statement refuted, or at least cast doubt on, Hill's direct testimony and Braunstein's initial recollection. Both conflicted with the prosecutor's recollection of the Hill interview, at least as purported in her notes. Under the statute, a person may be convicted of aggravated menacing "when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury." [12] Given Hill's testimony that he was "not necessarily" worried about his own safety, and a similar sentiment noted and testified to by Braunstein, the prosecutor's notes constituted the only basis on which the State could reliably persuade the jury that the State had met its burden of proof that Hill feared imminent physical injury.

Unlike the circumstances in *Hughes v. State*, the prosecutor here did not seek to impeach Braunstein's testimony after the prosecutor's notes "refreshed" her memory.[13] But the same fairness considerations apply whether the witness is hostile or, as here, a captive employee. By using evidence that the jury knows emanated from the prosecutor and that is a product of her own senses, the prosecutor can be seen only as having vouched for the evidence's credibility, without the safeguard of being subject to cross-examination by defendant's counsel. In effect, the prosecutor plays a duel role by advocating, as a State official, the State's position while simultaneously generating, as a witness, the evidence needed to meet the burden of proof to successfully prevail on that position.

Furthermore, even if solely used to refresh Braunstein's memory, the absence of any other evidence to corroborate the comments found in the prosecutor's notes and the victim's own live testimony contradicting it demonstrates its prejudicial effect. Ultimately, without that specific source of information, the jury would never have heard the "last day" statement. When combined with the concerns surrounding the "official position ... and superior access to the facts" the State enjoys and the status of the captive employee whose recollection was "refreshed," the admission of this testimony of refreshed recollection

---

9. *Martin v. State,* 433 A.2d 1025, 1035 (Del. 1981).

10. *Hooks v. State,* 416 A.2d 189, 207 (Del. 1980).

11. 490 A.2d 1034, 1048 (Del.1985).

12. 11 *Del. C.* § 602(b).

13. *See* 490 A.2d at 1048 (holding that where prosecutor "first used the notes to refresh the recollections of two defense witnesses and then to impeach the credibility of those witnesses," prosecutor was, "in effect, vouching for the reliability of his own notes.").

had an immediate, prejudicial effect on Douglas's chances for a fair trial on the aggravated menacing charge.

■ As we stated in *Hughes*, a prosecutor seeking to introduce evidence that would necessitate him or her assuming the role of a witness must either forego using that evidence or step down as prosecutor.[14] Because the prosecutor did neither in this case, we find that the trial judge abused his discretion by allowing the prosecutor to refresh Braunstein's memory with the prosecutor's personal notes. We therefore vacate Douglas's aggravated menacing and related PFDCF convictions, both of which required proof beyond a reasonable doubt that Hill "fear[ed] imminent physical injury."[15]

### III.

### A.

Underlying the State's cross-appeal is the trial judge's *sua sponte* decision to question the sufficiency of the evidence supporting the kidnapping charges. Finding that Douglas's actions only facilitated the robbery and that it was "pretty easy to get out of that cooler," the trial judge held that Douglas failed to substantially interfere with the victims' liberty. The trial judge then dismissed the kidnapping and related firearms charges.

In its cross-appeal, the State claims that the trial judge erred as a matter of law by focusing on the nature and duration of the victims' movement rather than on whether the restraint Douglas applied was incident to or independent of the underlying offense. The State asserts that because Douglas obtained the money before locking the clerk and customer in the freezer, his decision to confine the two came only after he completed the robbery. According to the State, the trial judge's emphasis on the ease of escape is irrelevant.

■ When indicted and tried on a kidnapping charge accompanied by an underlying offense, a defendant is entitled to "a specific instruction requiring the jury to find that the movement and/or restraint is independent of and not incidental to the underlying crime."[16] Before instructing the jury, however, "the trial judge must determine if the facts presented in the State's case warrant the submission of that issue to the jury at all."[17] Thus, a trial judge must consider, as a matter of law, whether the evidence of restraint proves that there was substantial interference with the victims' liberty in addition to that which is "ordinarily incident to the underlying crime."[18] This analysis applies even when the underlying crime also constitutes the unlawful purpose of the kidnapping charge.[19]

■ As a result, when a kidnapping charge accompanies a charge of robbery, "the dispositive issue is not the degree or duration of the movement and/or restraint, but whether the movement and/or restraint are incident to the underlying offense or are independent of the underlying offense."[20] We review a trial judge's decision that the evidence offered to convict of a crime is insufficient as a matter of law to

---

14. *See id.*

15. Because our holding requires that we vacate these convictions, Douglas's second contention on appeal is moot.

16. *Weber v. State*, 547 A.2d 948, 959 (Del. 1988).

17. *Id.*

18. *Taylor v. State*, 1991 Del. Lexis 339.

19. *State v. Zuppo*, 2002 Del.Super. Lexis 18.

20. *Weber*, 547 A.2d at 958.

ensure that it is supported by the record and is the product of an orderly and logical deductive process.[21]

## B.

■ Before dismissing the kidnapping charges, the trial judge found that the victims' obvious escape route, regardless of whether Douglas knew of its existence, justified a finding that Douglas's actions were inseparable from the robbery. The trial judge discussed the legal standard applicable to kidnapping charges:

> [W]hat you are looking at is not linear or temporal analysis, the movements or the nature of the restraint or the duration, but basically a substantial interference *independent of the underlying robbery.* And that issue should focus on whether the restraint or movement [is] incident to the underlying offense or independent of [it]. And that the restraint must be much was there.[22]

The next day, he found that the charge failed to meet that standard:

> It's clear to me by putting the people in that cooler it was visible, with some effort, they were going to get out of there. Because all they have to do is knock some milk cartons and things out of the way and push the front glass door that they knew would open and extricate, [and] get out that way. So, in looking at it, I'm not satisfied that it's independent of—also going back to what I said yesterday, the force used to overcome the resistance or retention thereof immediately after the taking, and I think the slight movement is not sufficient.[23]

The trial judge's comments on the record suggest that to him, Douglas's conduct did not constitute an independent act of restraint both because the victims knew they were able to escape and that they could do so effortlessly.

Because he focused on the ease of escape, the trial judge analyzed the "degree or duration" of the movement and restraint Douglas applied to the victims when he forced them into the freezer. Whether the victims had an actual means of escape is unrelated to the requisite judicial inquiry: that the use of restraint, regardless of degree, constituted an independent act divorced from the underlying offense. An individual could apply the most severe restraint on a victim and still act solely within the bounds of the underlying offense.

The trial judge's comments on the record reflect that he recognized the necessity of focusing on whether Douglas applied restraint "independent" of the underlying robbery, but his actual analysis erroneously centered on the victims' ability to evade the restraint with apparent ease. This disconnect is evident in the trial judge's reasoning. He did not examine whether the restraint Douglas exerted was incident to or independent of the robbery, despite declaring he is about to do so. Instead he concentrated on the degree of restraint. While the trial judge correctly identified the legal issue, he erred by not focusing on the operative set of facts necessary to resolve that legal issue. Therefore, the trial judge's decision to dismiss the kidnapping and related charges must be reversed.

## IV.

For these reasons, the aggravated menacing and related **PFDCF** convictions are

---

**21.** *Gronenthal v. State,* 779 A.2d 876, 884 (Del.2001).

**22.** Trial Tr. at A–209 (emphasis added).

**23.** *Id.* at B–9 (comments from "yesterday" reproduced in first block quote).

**VACATED** and the judgment of the Superior Court dismissing the kidnapping charges and accompanying PFDCF charge is **REVERSED**. We **REMAND** for a new trial, on these charges only, consistent with this Opinion.