**David WRIGHT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 19, 2009.

Supreme Court of Delaware.

Submitted: July 8, 2009.
Decided: Aug. 19, 2009.

Nicole M. Walker, Office of the public Defender, Wilmington, Delaware for appellant.

Abby Adams, Department of Justice, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice.

David Wright appeals from a Superior Court final judgment of conviction of Second Degree Kidnapping. Wright claims that the trial judge erroneously denied his motion for a judgment of acquittal because his restraint of the victim was incidental to, and not independent of the crime of robbery. Because we find no merit to Wright's claims, we **AFFIRM.**

### FACT AND PROCEDURAL BACKGROUND

Around 6 a.m. on December 31, 2007, Robert Steck went to the Lewes/ Rehoboth Moose Lodge. Steck, who was the Lodge administrator, planned to gather cash and checks from the Lodge bar to make a bank deposit. Steck gathered approximately $5,000 in cash and $1,270 in checks, placed the money in a bag, and set the building's alarm. After Steck left the building and locked the doors, Wright—wearing a ski mask and a hooded sweatshirt, and carrying a shotgun—approached Steck.

Wright demanded several times that Steck drop his bag, but Steck refused. Although Wright brandished his shotgun at Steck, Steck refused to drop the bag. Wright bludgeoned Steck with the shotgun, and Steck dropped the bag. Wright next ordered Steck to unlock the door to the Lodge and go back inside. Wright followed Steck into the vestibule, ordered him to lie face down on the floor, and proceeded to duct tape Steck's hands and feet together. Wright then rummaged through Steck's pockets and took his wallet, cell phone, and pocket knife. At that point, the building's audible alarm went off. Wright fled, locking the entry door behind him. The Delaware State Police responded within a few minutes of the alarm. By then, Steck had loosened his duct tape bonds and unlocked the door for the police.

On January 28, the State Police took Wright into custody on an unrelated warrant. While Wright was in custody, the police connected him to the Moose Lodge robbery and arrested Wright for that rob-

bery on February 20. Wright waived indictment, and on March 31, 2008, the State filed an information charging him with First Degree Robbery, Possession of a Firearm During the Commission of a Felony, Second Degree Kidnapping, Wearing a Disguise During the Commission of a Felony, Possession of a Deadly Weapon by a Person Prohibited, and Third Degree Assault.

Trial began on November 10, 2008. At trial, Wright stipulated to being a person prohibited from possessing a deadly weapon, and the State entered a *nolle prosequi* on the Third Degree Assault charge. At the close of the State's case, Wright's counsel moved orally for a judgment of acquittal on the Kidnapping charge. Counsel argued:

> In light of the facts set out in *Weber [v. State[1]]* and in its prodigy [sic], I think in this case the kidnapping was completely incidental to the robbery. I think that the important factors that the Court should look at are that the victim was not removed from the scene. He was only moved to a couple of feet inside the vestibule. While he was confined with the duct tape, he was able to get out of the duct tape and also unlock the door....

> \* \* \*

> Also ... there was not an exceptional amount of duct tape used to bind the person. I think the significant factor is that he really wasn't removed from the scene. In the other cases that I saw, frequently a victim was taken away somewhere and something happened. In this case, I think that the kidnapping was completely incidental to the robbery, and I would ask that under the facts of *Weber*, as to the kidnapping

charge, that it be dismissed by the [c]ourt.

After hearing the State's response, the trial judge denied the motion, reasoning:

> [T]he other case that talks about th[is] situation is *Douglas v. State*, 879 A.2d 594 [Del.] 2005.

> The movement and/or restraint, of course, is independent of and not incidental to the underlying charge of robbery.

> Here I am finding the robbery was basically completed outside the Moose Lodge. The victim was confronted by a person who displayed a shotgun.... [T]he evidence shows that after the victim was moved inside the vestibule of the Moose Lodge from outside of public view to inside, it is a fair instance [sic] that that was done simply to get the victim out of public view. And in the vestibule, the victim, of course, was detained and restrained.

> For sufficiency purposes, to move forward to the jury, I find that there is sufficient evidence of restraint that was substantial interference with the victim's liberty in addition to that ordinarily incident to the robbery that occurred by use of the shotgun.... So for sufficiency purposes it will move forward to the jury.

On November 14, 2008, a jury convicted Wright of all charges. The Superior Court declared Wright a habitual offender under 11 *Del. C.* § 4214(a), and on January 14, 2009, sentenced Wright to a total of 74 years incarceration. Fifteen of those years were for the Kidnapping conviction. Wright timely appealed the denial of his motion for a judgment of acquittal on Kidnapping Second Degree.

---

**1.** 547 A.2d 948 (Del.1988).

## DISCUSSION

The trial judge denied Wright's motion for a judgment of acquittal on the Kidnapping charge. He reasoned that Wright had "basically completed" robbing Steck outside the lodge and that, by forcing him into the lodge and duct taping him, Wright had restrained his liberty in a manner exceeding the restraint that would ordinarily be incident to First Degree Robbery. On that basis, the trial judge found sufficient evidence for the Kidnapping charge to go to the jury.

On appeal, Wright's central argument is that the State was required—but failed—to establish that he restrained Steck's liberty in a manner greater than what was necessary to successfully rob Steck. Wright makes three contentions in support of that argument. First, Wright argues that the entire chain of events at the Moose Lodge was directly related to the robbery, which began when he encountered Steck outside the Lodge and ended when Wright fled. Moving Steck into the Lodge and duct taping him, Wright claims, was inextricably linked to the robbery because that conduct: (1) allowed Wright to evade detection; (2) facilitated stealing additional items in furtherance of that same robbery; and (3) was necessary to overcome Steck's resistance to the robbery. Second, Wright contends that the State conceded, in its information, that Wright restrained Steck to facilitate a robbery; therefore, Steck's restraint was incidental to the robbery. Third, Wright argues that the fact that Steck was quickly able to free himself from his bonds and open the door for the police establishes that there was no significant restraint.

The central issue is whether Wright restrained Steck incidentally to or separately from the robbery. If the restraint was incidental to the robbery, then as a matter of law it could not support an independent Kidnapping charge. Whether Wright restrained Steck incidentally to the robbery requires determining whether Wright's interference with Steck's liberty exceeded the interference required to further the robbery. Before turning to that issue, it is helpful first to outline the legal framework for analyzing whether restraining a victim in the course of a separate crime gives rise to an independent charge of Kidnapping.

■ Wright was charged with violating 11 *Del. C.* § 783(3), which provides:

> A person is guilty of kidnapping in the second degree when the person unlawfully restrains another person with any of the following purposes: ... (3) to facilitate the commission of any felony or flight thereafter ... and the actor voluntarily releases the victim alive, unharmed, and in a safe place prior to trial.

The Kidnapping statute defines "restrain" to mean:

> ... restrict[ing] another person's movements intentionally in such a manner as to interfere substantially with his liberty by moving him from 1 place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation or deception.... [2]

That statutory definition embodies three elements: "(1) substantial interference with another's liberty; (2) by movement or confinement; (3) without consent." [3] It is

---

**2.** 11 *Del. C.* § 786(a).

**3.** *Weber,* 547 A.2d 948, 957 (Del.1988) (internal citations and quotations omitted).

undisputed that Wright moved and confined Steck without his consent. Therefore, only the first element—substantial interference with another's liberty—is at issue.

■ We have construed the "substantial interference" requirement as a limitation on the scope of offenses that constitute kidnapping,[4] to "insure[ ] that where the movement or restraint is *entirely incident[al]* to the underlying crime, there cannot be a kidnapping conviction under 11 *Del. C.* § 783A."[5] Where, as here, a kidnapping charge is based on an underlying offense it:

> should not be submitted to the jury unless the trial judge concludes that there are facts in the record which would support independent convictions on the kidnapping charge and on the underlying charge.
>
> The trial judge must determine, as a matter of law, if the evidence of restraint proves that there was *"much more" (substantial) interference with the victims* [sic] *liberty than is ordinarily incident to the underlying crime.*[6]

■ In *Weber v. State*,[7] we adopted a two step analytical framework governing cases where a Kidnapping charge accompanies an underlying offense. In those cases, the defendant is entitled to a specific jury instruction that, to convict on the

kidnapping charge, the jury must find that the movement and/or restraint of the victim is "independent of" and not "incidental to" the underlying crime.[8] Before delivering that instruction, "the trial judge must determine if the facts presented in the State's case warrant the submission of that issue to the jury at all."[9] "Thus, a trial judge must consider, as a [threshold] matter of law, whether the evidence of restraint [is sufficient to prove] that there was substantial interference with the victims' liberty in addition to that which is ordinarily incident to the underlying crime."[10]

### The Standard of Review

Generally, we would review a sufficiency determination under *Weber* to ensure that it is supported by the record and is the product of an orderly and logical reasoning process.[11] Here, however, Wright does not challenge the Superior Court's *Weber* sufficiency determination. Instead, he appeals the denial of a motion for a judgment of acquittal (which incorporates a sufficiency determination). Both parties agree that the standard of review of the denial of Wright's motion for a judgment of acquittal is *de novo*, to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[12]

---

4. *Id.* at 958 (citing *Burton v. State*, 426 A.2d 829, 833–36 (Del.1981), additional citations omitted).

5. *Id.* at 958 (citing *Burton*, 426 A.2d at 834) (emphasis in original). 11 *Del. C.* § 783A (First Degree Kidnapping) differs from Section 783 (Second Degree Kidnapping-the statute Wright was charged under) only in that Section 738A requires that the kidnapper not voluntarily release the victim unharmed prior to trial. *Cf.* 11 *Del. C.* § 783A.

6. *Id.* at 959 (internal citations omitted) (emphasis added).

7. 547 A.2d 948 (Del.1988)

8. *Id.* at 959.

9. *Douglas v. State*, 879 A.2d 594, 599 (Del. 2005) (quoting *Weber*, 547 A.2d at 959).

10. *Id.*

11. *Id.* at 599–600.

12. *Farmer v. State*, 844 A.2d 297, 300 (Del. 2004). That standard, in effect, is essentially the same as the *Weber* standard.

Having set forth the standard of review and the analytical framework for determining whether a restraint is "incidental to" or "independent of" an underlying offense, we turn to the facts.

### The State Did Not Concede That Wright's Restraint of Steck's Liberty Was Incident to the Robbery

■ The issue of whether the State conceded, in its information, that Wright restrained Steck for the purpose of facilitating a robbery—and that therefore the restraint was incidental to the robbery—requires us to interpret the Kidnapping statute. We review matters of statutory interpretation de novo.[13]

Wright was charged with violating 11 Del. C. § 783(3), which provides:

A person is guilty of kidnapping in the second degree when the person unlawfully restrains another person with any of the following purposes: ... (3) to facilitate the commission of any felony or flight thereafter ... and the actor voluntarily releases the victim alive, unharmed, and in a safe place prior to trial.

The information charged Wright with:

... unlawfully restrain[ing] Richard Steck with the intent to facilitate the commission of any felony or flight thereafter and did voluntarily release him unharmed prior to trial."

The language of the charging document precisely tracks § 783(3). To accept Wright's argument would require us to interpret "facilitating" to mean that an unlawful restraint is always "incidental" to the felony it facilitates. Wright's interpretation would render Section 783(3) a nullity. We reject it.

### Wright's Restraint of Steck's Liberty Was Independent of the Underlying Robbery

■ Wright next argues that, because he did not restrain Steck's liberty more than that which was required to rob him, the restraint was incidental to the robbery. The State responds that the restraint of Steck's liberty exceeded what was necessary for the robbery; therefore, the restraint was a crime separate from and independent of the robbery. This legal dispute rests on competing interpretations of the critical terms "incidental to" and "independent of." Wright's argument presupposes that criminal conduct is legally incidental to an underlying offense, where that conduct is committed only to further the commission of the underlying offense.[14]

---

**13.** *Tony Ashburn & Son v. Kent County Reg'l Planning Comm.*, 962 A.2d 235, 239 (Del. 2008).

**14.** *See, e.g.*, Appellant's Op. Br. at 9 ("The robbery and the restriction of Steck's movement were tied together ... The State's own charging decision demonstrates the incidental nature of the restriction. It charged Wright with restricting Steck's movement for the purpose of facilitating the robbery. Thus, the purpose of the restriction was to ensure that the robbery was completed efficiently. *See Allen v. State*, [970 A.2d 203, 219 (Del.2009)] (recognizing that there can only be a finding of kidnapping if the purpose of the restriction of movement was more than to ensure an underlying robbery was completed.")).

Wright's reading of *Allen* is inaccurate. Wright appears to rely on the following language in *Allen:*

Allen contends that the trial judge erred by failing to follow the process required by *Weber v. State* before submitting the charge of Kidnapping in the Second Degree to the jury. He contends that "[t]he perpetrator's sole intent appear[ed] to have been nothing more than to complete the robbery efficiently[,]" and that "[i]t would be manifestly unjust to allow a conviction based on a charge lacking independent criminal intent to remain of record." The State concedes that a *Weber* instruction should have been given. We agree.

*Allen*, 970 A.2d at 219. It is clear from the *Allen* opinion that the Court was agreeing

The State's argument assumes that criminal conduct is legally independent of an underlying offense, if that conduct constitutes an act that is not an element of the underlying offense. Wright's argument rests on a faulty premise, because under our case law on Kidnapping, the inquiry is whether the defendant interfered "much more" with the victim's liberty than the level of interference typically associated with the underlying offense.[15]

As the Superior Court stated in *State v. Amad*:[16]

> The degree or amount of restraint which is ordinarily incident[al] to robbery consists of that restraint which is necessary to prevent or overcome resistance to the taking and retention of property, or to compel or otherwise cause the victim to deliver up the property.[17]

Wright argues that the restraint required to move Steck into the vestibule and to duct tape him did not exceed the level ordinarily incidental to robbery—to conceal the robbery from passersby and to prevent Steck from resisting. Wright points to Steck's earlier refusal to relinquish the bag containing the Lodge's receipts. *Amad*, which involved facts analogous to this case, completely undercuts Wright's argument. In *Amad*, four armed men entered a credit union, restrained the employees by binding their hands behind their backs with duct tape, took cash out of the registers, and fled.[18] The Superior Court held:

> In this case, each of the credit union employees had their hands bound behind their backs with duct tape, while they were face down, on the floor. This restraint commenced during the robbery and continued after the robbery was concluded. The fact that the victims were able to escape their bindings so quickly does not diminish the nature of the restraint imposed. *While the restraint imposed was obviously done to facilitate the robbery and the flight therefrom, the Court remains convinced that the restraint could be viewed by a reasonable juror as "much more" restraint than that necessary to accomplish the theft of the credit union money.* Therefore the issue was properly presented to the jury for its determination pursuant to the instructions given.[19]

Here, as in *Amad*, Wright duct taped Steck to facilitate the robbery and his flight. Even if it is assumed, without deciding, that ordering Steck into the building's vestibule to conceal the robbery was ordinarily incidental to that offense, duct taping Steck was "much more" restraint than that typically associated with a robbery. The level of restraint necessary to accomplish the typical robbery would be pointing a weapon at the victim and commanding the victim to stay still or move to a different location.

with the State's concession that the trial court should have given a *Weber* instruction, not with the defendant's contention that a restraint based only on intent to complete a robbery efficiently cannot give rise to Kidnapping liability. Wright fails to point to any other authority in support of his contention that restraints that only serve to abet a robbery cannot give rise to Kidnapping liability. As discussed above, this approach treats 11 Del. C. § 738(3) as a nullity, and must be rejected.

15. *Weber v. State*, 547 A.2d 948, 959 (Del. 1988).

16. *State v. Amad*, 767 A.2d 806 (Del.Super.1999) *(aff'd State v. Amad*, 1999 WL 169399 (Del.)) (overruled on other grounds by *Poteat v. State*, 840 A.2d 599 (Del.2003)).

17. *Id.* at 809.

18. *Id.* at 807.

19. *Id.* at 809 (emphasis added).

Attempting to distinguish *Amad,* Wright points out that *Amad* involved four robbers and three firearms and that nothing was taken from the employees personally. That distinction is without merit. First, that there were more robbers and guns in *Amad* than here is unresponsive to the legally significant issue—the restraint of the victim's liberty. That there were more robbers (and guns) in *Amad* establishes only that the robbery there was larger in scale. Second, Wright fails to explain the legal significance of the fact that in *Amad* nothing was taken directly from the employees. Even if the theft of the Lodge's money and of Steck's personal items constituted one single robbery, there was sufficient evidence for a rational juror to conclude that ordering Steck back into the Lodge and then duct taping him constituted "much more" of a restraint than would ordinarily be incidental to a robbery.[20] Wright's argument that binding Steck was necessary because of Steck's earlier "resistance" (his refusal to turn over the bag containing the lodge's money until Wright hit him), created at most a factual dispute. A rational juror could (and evidently twelve did) resolve that dispute in favor of the State.

■ Finally, Wright's argument that binding Steck was not a significant restraint because he was able to escape shortly after the police left is without merit. The "degree or duration" of the restraint is legally irrelevant to whether the restraint was incidental to, or independent from, the underlying offense.[21]

### CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

20. *Id.*

21. *See Douglas v. State,* 879 A.2d 594, 600 (Del.2005) (questioning the trial judge's analysis of the " 'degree or duration' of the movement and restraint" the defendant applied to the victims, instead of focusing on whether the restraint was an independent act). *See also Weber* 547 A.2d at 958 ("When a defendant is charged with kidnapping in conjunction with an underlying crime such as rape,

robbery, or assault, the dispositive issue is not the degree or duration of the movement and/or restraint, but whether the movement and/or restraint are *incident to* the underlying offense or are *independent of* the underlying offense.") (emphasis in original); *see also Amad,* 767 A.2d at 809 ("The fact that the victims were able to escape their bindings so quickly does not diminish the nature of the restraint imposed").