Peter KOSTYSHYN, Defendant
Below Appellant,

v.

STATE of Delaware, Plaintiff
Below Appellee.

No. 71, 2011.

Supreme Court of Delaware.

Submitted: June 7, 2012.
Decided: Sept. 4, 2012.
Corrected: Sept. 5, 2012.

Bernard J. O'Donnell, Office Public Defender, Wilmington, Delaware for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

A jury convicted Peter Kostyshyn of three crimes. He now appeals, claiming that the Superior Court judge erred by finding he forfeited his right to appointed counsel, even though he screamed "You're an idiot" at one of his attorneys during a court hearing, and then managed to drive off his next attorney by engaging in behavior the Superior Court judge deemed "abusive." Kostyshyn claims that the Superior Court judge erred by failing to order, *sua sponte*, a competency hearing, even though the judge conducted lengthy colloquies about all aspects of Kostyshyn's case. Finally, Kostyshyn argues that the trial judge's clarifying instruction to the jury constituted an impermissible comment on what facts the jury should find. Finding no merit to any of these arguments, we affirm the convictions.

### FACTS

When William Corrigan took out his trash on August 22, 2009, Peter Kostyshyn threatened to stick a pickax in him. Kostyshyn owned land next to Corrigan's house, and had been working the ground with the pickax. Corrigan went inside his house and called the police, who interviewed both men. Kostyshyn claimed Corrigan threatened him. The police arrested Kostyshyn.

A Grand Jury indicted Kostyshyn on charges of Aggravated Menacing, Possession of a Deadly Weapon During the Commission of a Felony, and Terroristic Threatening. In October 2009, a Superior Court judge appointed Patrick Collins to represent Kostyshyn. Only two months later, Collins moved to withdraw, citing three specific events. First, Kostyshyn refused to sign his notice to appear for the final case review. Second, during a hearing in the Court of Common Pleas on December 1, 2009, Kostyshyn yelled at Collins, "Mr. Collins, you're fired. You're an idiot." Third, later on that same day, Kostyshyn left Collins a 30 minute voicemail, during which Kostyshyn: instructed Collins to withdraw from representing him; told Collins he was going to sue for malpractice; accused Collins of being incompetent and colluding with the prosecutor; and made insulting statements about Collins. Based on Collins' representations about these events, a Superior Court judge granted Collins' motion to withdraw without holding a hearing.

After some difficulty locating an attorney willing to represent Kostyshyn, a judge appointed Peter Letang as substitute counsel. Within three weeks, Letang moved to withdraw from representing Kostyshyn. After holding a hearing, a Superior Court judge granted the request, finding that Kostyshyn had engaged in sufficiently egregious activity to forfeit his Sixth Amendment right to counsel:

> I'm now satisfied, Mr. Kostyshyn, you are not in a position to work in a productive manner with assigned counsel. The record in this case reflects that you were abusive to Mr. Collins. . . . I then, at great effort, appointed for you a Superior Court practitioner with an impeccable [reputation] . . . and, frankly, one with the demeanor, patience, and tolerance that I hoped at least would allow the two of you to work together in a productive way.
>
> I'm satisfied from Mr. Letang's motion and representations to the Court in presenting that motion today that he made every effort and then some to work with you in a productive way. . . .
>
> In response to that, you were abusive to him, you were threatening to him, including threats to refer him to disciplinary counsel. That is not an environment that allows for effective representation. . . . [1]

Consequently, the Superior Court judge granted Letang's motion to withdraw.

Kostyshyn proceeded *pro se,* and the trial lasted six days. At its conclusion, the Superior Court judge provided the jury with written instructions. Uncertain of the meaning of one of the instructions, the jury sent the judge a note seeking clarification about the wording of one element. The judge read the note aloud and offered a response:

> Ladies and gentlemen, I have received a note from you, which I'll read and give you, then, the answer to the question.

---

1. *State v. Kostyshyn,* Cr. A. No. 0908020496, at 22–23 (Del.Super.Feb.23, 2010) (TRAN-SCRIPT).

Quote, Your Honor, we have a question about the definition of intent on page six. In the statement, quote, intent is a purpose to use a particular means to effect a certain result, end of quote. In this case, is the result the threat itself to stab or the fear as defined in No. 2 on that page. Thank you. Signed by the foreperson.

My answer to your question is the intention is to place William Corrigan in fear of imminent physical injury.

After trial, a jury convicted Kostyshyn of all three offenses. On appeal, Kostyshyn argues that the Superior Court judge erred by: (1) finding that Kostyshyn had forfeited his right to counsel; (2) failing to order a competency hearing; (3) providing a misleading jury instruction.

## STANDARD OF REVIEW

■ We review the Superior Court judge's decision finding that Kostyshyn forfeited his right to counsel for an abuse of discretion.[2] We will only overturn a Superior Court judge's failure to order a competency hearing if that failure constituted clear error.[3] Because no objection to the jury instructions was made during trial, we review Kostyshyn's claim that the trial judge formulated the instructions incorrectly for plain error.[4]

## DISCUSSION

### Counsel Forfeiture

■ The Superior Court judge correctly found that Kostyshyn forfeited his right to counsel. Although the State argued only

that Kostyshyn does not qualify as indigent, and therefore never had a right to a court appointed attorney, we decline to decide this case on that basis. Rather, we find that even if Kostyshyn were indigent, he forfeited his right to counsel by his abusive behavior.

In *Bultron v. State*, we held that the defendant forfeited his Sixth Amendment right to counsel because of his "continuing profanity and insulting conduct directed toward his counsel after jury selection and his refusal to make peace with counsel."[5] This holding resulted from our application of a rule, described by the Third Circuit, in *U.S. v. Thomas*, that a defendant forfeits his right to counsel if his behavior is "sufficiently egregious."[6] In *Thomas*, the defendant was verbally abusive to his appointed counsel, refused to cooperate with him, and tried to force him to file meritless claims.[7] In *Thomas* the finding of forfeiture depended, in part, on the defendant's unworkable relationship with multiple attorneys. "Perhaps most critically, Thomas engaged in this sort of misconduct not once, but in relationships with four attorneys."[8]

Similarly, Kostyshyn went through multiple attorneys in this case. And the record demonstrates that his past similar behavior hindered the court's efforts to appoint counsel for him. On January 15th, a Superior Court judge commented on Kostyshyn's history of being unable to work with attorneys: "You are developing a bit of a reputation because attorneys who seem to be able to represent people effectively through trial and beyond are having diffi-

2. *Bultron v. State*, 897 A.2d 758, 762 (Del. 2006) (collecting cases).

3. Supr. Ct. R. 8.

4. *Probst v. State*, 547 A.2d 114, 119 (Del. 1988); *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011) (applying plain error because defendant did not request a different instruction).

5. 897 A.2d 758, 766 (Del.2006).

6. *U.S. v. Thomas*, 357 F.3d 357 (3d Cir.2004).

7. *Id.* at 363.

8. *Thomas*, 357 F.3d at 363.

culty getting off even the starting line with you because of whatever reason." [9] As forecasted at the January 15th hearing, the judge did have trouble finding someone to represent Kostyshyn:

> And on January 15th I told you that I would do my best to try to secure new counsel for you, which, after a great deal of effort going through many, many different attorneys on our conflict panel, all of whom either declined or expressed conflicts in representing you, we were able to secure counsel for you, and, in my view, probably one of the most experienced and effective criminal attorneys in the state, who agreed to represent you probably, as he's mentioned, with some trepidation but nevertheless he did so. [10]

If a defendant acts abusively toward appointed counsel, he is at risk of forfeiting his right to have appointed counsel. The Superior Court judge found Kostyshyn's behavior toward Letang sufficiently egregious to warrant forfeiture, as did a Court of Common Pleas judge. [11] The Superior Court judge did not abuse his discretion.

### Competence

We decline to find the trial judge committed clear error by not ordering a competency hearing *sua sponte*.

The Due Process clause protects an incompetent person from criminal conviction. [12] "To be competent to stand trial, a defendant must have 'a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and must possess 'a rational as well as factual understanding of the proceedings against him.'" [13] "Due Process requires the trial court to inquire *sua sponte* as to the defendant's competence in every case in which there is a reason to doubt the defendant's competence to stand trial." [14]

The Third Circuit, following the lead of the United States Supreme Court, has avoided providing a precise, all encompassing, definition of the circumstances that will create "a reason to doubt the defendant's competence." In other words, there are no clear criteria affording guidance to a judge deciding whether a defendant presents "indicia of incompetence." [15] Instead, the Third Circuit has adopted the United States Supreme Court's open-ended definition of the meaning of "a reason to doubt the defendant's competence":

> [A] defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even

---

9. *State v. Kostyshyn*, Cr. A. No. 0908020496, at 16 (Del.Super.Jan. 15, 2010) (TRANSCRIPT).

10. *Id.* at 15.

11. Letang concurrently represented Kostyshyn in connection with charges before the Superior Court and the Court of Common Pleas. *State v. Kostyshyn*, Case Nos. 0909010151, 0902010157, 0906007625, at 8 (Del.Com.Pl. Feb. 15, 2010) (granting Letang's Motion to Withdraw).

12. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, (1966).

13. *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir.2001) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)).

14. *Jermyn*, 266 F.3d at 283 (citing *Drope v. Missouri*, 420 U.S. 162, 173, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)).

15. *See Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir.2007) ("[B]arring indicia of incompetence, due process does not require that a competency hearing be held.") (citing *Godinez v. Moran*, 509 U.S. at 402 n. 13, 113 S.Ct. 2680.)

one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.[16]

▮ When considering a defendant's competency, a judge should not consider whether the defendant has the social skills to interact productively with his lawyer. Rather, the judge should consider whether the defendant is able to understand the proceedings. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." [17]

▮ Kostyshyn's counsel points to several facts in an attempt to suggest that the trial judge should have held a hearing on Kostyshyn's competency. None of these are persuasive. First, counsel contends Kostyshyn "recognized the limits of his legal capacity" because: (1) he explained his inability to recall, from memory, a list of 20 names of people unfamiliar to him by reference to two head injuries and medications; and (2) he said "there's going to be a defense of mental infirmity at trial." [18] Neither of these claims suggested a problem with Kostyshyn's capacity. Few people could remember a list of twenty names, consisting mostly of people who were otherwise strangers. Kostyshyn's statement about a defense of mental infirmity seems to suggest that Kostyshyn believed one of his attorneys was mentally infirm:

And since there's going to be a defense of mental infirmity at the trial—that's why I had asked for the subpoenas for—and you've indicated, for the record, the attorney Patrick Collins, the attorney Peter Letang and the public defender, who all three have all the evidence that could easily answer the questions that you've asked me, *one who has been deemed to be mentally infirmed by the hearing in CCP*, which Mr. Frawley is aware of.[19]

That is, Kostyshyn considered one of his own attorneys—"one" of the three he had recently referenced—infirm. Perhaps Kostyshyn meant to say that he planned to mount a defense based on his own incompetence; but if so, he did not say it plainly. More to the point, his discussion with the Superior Court judge that day indicated that Kostyshyn understood the charges against him and had prepared a defense. In the context of that lengthy discussion, these statements did not create sufficient concern to necessitate a hearing on Kostyshyn's competence to stand trial.

▮ Second, counsel contends that two bizarre references Kostyshyn made in court—one to seeing Tom Capano in international waters, and the other to discovering evidence about the Fahey case—demonstrated his incompetence. A full reading of the transcript suggests Kostyshyn used absurd examples to underscore his point that no matter where he was on a particular day, or what he observed on that day, he would not share that information with the Superior Court judge.[20] Calculated obstinance does not

---

16. *Taylor,* 504 F.3d at 433 (quoting *Drope,* 420 U.S. at 180, 95 S.Ct. 896).

17. *Godinez v. Moran,* 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

18. *State v. Kostyshyn,* Cr. No. 0908020496 (Del.Super.Oct.5, 2010) (TRANSCRIPT).

19. *Id.* at p. 100 (emphasis added).

20. *Id.* at p. 100 (Kostyshyn became agitated after the Superior Court judge asked him to provide the addresses to which Kostyshyn contended a subpoena should have been sent. "MR. KOSTYSHYN: Well, Your Honor, I'm

demonstrate an inability to understand the proceedings.

Third, counsel argues that one juror's fear that Kostyshyn might discover his name and address demonstrates Kostyshyn's incompetence. We cannot agree with this argument, lest every person convicted of a violent crime be considered incompetent.

Kostyshyn may be cantankerous, but the record does not suggest that he lacks the ability to understand the proceedings he faced. None of the arguments put forward on appeal suggests that the Superior Court judge committed clear error by failing to order a competency hearing without any prompting from Kostyshyn's attorney. We also find it telling that the State's Answering Brief stated that none of the attorneys who represented Kostyshyn ever contended he was incompetent, nor has any judge ever ordered a competency hearing. Kostyshyn never disputed this statement.[21]

The Superior Court judge did not commit clear error by failing to order a competency hearing *sua sponte.*

### *Jury Instructions*

■■■ The trial judge provided the jury with a supplemental instruction. If viewed in isolation, the supplemental instruction could perhaps be read as a comment on the facts. In context, however, the instruction provided written amplification of a phrase already contained in the instructions, and no jury would have thought this judge intended to resolve a factual issue.[22] Rather, the jurors would have read the supplemental instruction as exactly what the jury had requested: a further explanation of one of the issues the judge had charged them with deciding.

■■■ To preserve the jury's role as fact-finder, judges in Delaware refrain from instructing juries on how to resolve factual issues. The Delaware Constitution mandates this division of labor: "Judges shall not charge juries with respect to matters of fact, but may state the questions of fact at issue and declare the law."[23] In practice, judges have difficulty explaining the jury's task without inserting some facts from the case. For that reason, this Court has allowed instructions that include particular facts about the case in explaining the elements of a crime. For example, in *Herring v. State,* the trial judge gave a supplemental instruction that, if read in isolation, explicitly stated that the defendant's conduct met one of the elements of the crime:

not poor like most hillbillies are in the City of Wilmington or Delaware. If I live at 12 properties—I don't need to be embarrassed by you, Your Honor, of all people. All I'm simply saying is the fact that during the time of the question you asked, where was I on August 22nd—if I'm living on a boat in international waters, it's none of your business. If I'm sitting in the dock.... So I'm simply putting in the record the fact that on August 22nd, 2010—where I take my boats out, where I go is my business. I might see Tom Capano out there. We might find another part of the missing link to the Fahey—. THE COURT: I don't think you'll find Mr. Capano out at sea, sir. MR. KOSTYSHYN: ... *All I'm saying is,* Your Honor, for the record, the

subpoena for me should go to my only known legal address." (emphasis added)).

21. The sentencing judge referenced Kostyshyn's lengthy list of past criminal convictions during the sentencing hearing. *State v. Kostyshyn,* Cr. 0908020496, at 28 (Del.Super.Feb.11, 2011) (TRANSCRIPT).

22. *See Herring v. State,* 805 A.2d 872, 876 (Del.2002) (deciding trial judge did not comment on the evidence in supplemental instruction because "the initial and supplemental jury instructions, when viewed as a whole and in context, were not impermissible comments on the evidence.").

23. Del. Const. art. IV, § 19.

In order to establish Robbery First Degree you must find first Mr. Torres, *who is the other individual with the knife*, committed the crime of Robbery First Degree. *Second*, Mr. Herring aided or assisted him in committing that crime. And third, that Mr. Herring was either aware the weapon was to be used, or actively participated in the crime when the weapon was displayed.[24]

The second sentence in that paragraph presented the same problem presented by the supplemental jury instruction here. If jurors focused on that sentence in isolation, they might conclude that the judge not only instructed the jury about the matters *it had to decide*, but also told the jury how to decide one of them. But, a reasonable juror would understand the instructions containing the introductory phrase "you must find that," followed by a numbered list of items, to represent a list of items the jury must find, not as a suggestion that the trial judge was instructing them that the record established a particular fact to be true or that they *must* find that fact to have been proved.

This case reflects that same pattern. The judge need not repeat the phrase "you must find that" when offering clarification to written instructions. The jury would then consider the instructions as a whole— by looking at the written instructions and supplementing their understanding of a particular element of one offense with the additional answer provided by the judge.

### CONCLUSION

For the foregoing reasons, the judgments of the Superior Court are affirmed.

24. *Herring*, 805 A.2d at 875 (Italics supplied).