**STATE of Delaware,**

v.

**Ronald W. WILLIAMSON, Defendant.**

**ID No. 1106025042.**

Superior Court of Delaware, Sussex County.

Submitted: Sept. 6, 2012.
Decided: Sept. 10, 2012.

Paula T. Ryan, Esquire and John W. Donahue, IV, Esquire, Deputy Attorneys General, Department of Justice, Georgetown, DE.

Dean C. Johnson, Esquire and Robert H. Robinson, Jr., Esquire, Office of the Public Defender, Georgetown, DE.

## OPINION

STOKES, J.

Defendant Ronald Williamson is charged with two counts of Murder First Degree and numerous additional crimes related to the shooting death of Connie Breeding. On a defense motion, the Court conducted a competency hearing. After considering the expert testimony and reports, oral argument and related documents, I conclude that Defendant is competent to stand trial on the charged offenses.

**Facts and posture.** On June 26, 2011, Mark Anderson, Chief of Police, Greenwood, Delaware, responded to a dispatcher's call regarding a dispute occurring in Greenwood. Chief Anderson arrived at the scene with his police car video camera running. The video camera recorded a man later determined to be Defendant, holding a woman in a choke hold. In his other hand, Defendant held a handgun. Chief Anderson got out of his car and repeatedly ordered Defendant to drop his weapon. After a slight struggle with his victim, Defendant pointed the gun at her forehead and fired. He dropped her body on the ground and ran into a neighboring residence where he was arrested eight hours later.

Connie Breeding was found to have died as a result of a single gun shot to the head. The State seeks the death penalty on the intentional murder charge on grounds that the victim was being held as a shield or hostage.[1]

Defendant is housed in the Delaware Psychiatric Center ("DPC"). His records show that his behavior is acceptable. However, Defendant has firm attitudes about the crimes, the evidence and his defense attorneys. He believes there are two videotapes of the shooting, at least one of which was falsely manufactured by the State, with help from his attorney, Dean C. Johnson, Esquire. He has referred to Mr. Johnson as a "double agent" who is paid for his collusion with the State. The difficulties arising from these beliefs are the subject of this decision.

■ **Standard for determining competency.** In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the United States Supreme Court adopted a competency standard that remains intact today. The *Dusky* test is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceed-

---

1. Title 11 *Del.C.* § 4209(e)e.

ings against him." [2] This test is used by Delaware courts,[3] the Third Circuit[4] and the federal Supreme Court.

█ Delaware statutory law is consistent with but broader in its protection than *Dusky*, providing that a defendant is incompetent to stand trial if the trial judge finds after a hearing that "because of mental illness or mental defect, [defendant] is unable to understand the nature of the proceedings against the accused or to give evidence in the accused's own behalf or to instruct counsel on the accused's own behalf. . . ." [5]

An issue of competency often arises that is not addressed by *Dusky* or 11 *Del.C.* § 404(a); that is, how is the issue of competency to be addressed when a hearing has not been held, but the judge observes indicia of incompetence during the proceedings or the defendant raises the issue post-trial. In *Drope v. Missouri*,[6] the Court held that Missouri's statute satisfied due process, as defined by *Dusky*, by permitting a judge to order a psychiatric examination at any time he has "reasonable cause" to believe that defendant is incompetent.

In the case at bar, the State argues that *Kostyshyn v. State*,[7] supports its position that the ability to understand the proceedings suffices for a finding of competency. If so, the State need no longer prove that a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," as required by *Dusky*, and 11 *Del.C.* § 404(a). The issue and the posture in *Kostyshyn* were different from those presented in Williamson's case. The *Kostyshyn* issue was whether the case presented "a reason [for the trial court] to doubt the defendant's competence to stand trial"[8] and to order *sua sponte* a competency hearing. The Williamson issue is whether the State proved by a preponderance of the evidence at the hearing that Defendant is competent to stand trial.[9] Because the issues and the posture differ, *Kostyshyn* is not instructive here.

█ A showing by a preponderance satisfies due process because the issue is

**2.** *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

**3.** *See, e.g., Kostyshyn v. State*, 51 A.3d 416, 419–21 (Del.2012); *State v. Skinner*, 1994 WL 386865, at *13 (Del.Super.); *State v. Shields*, 593 A.2d 986 (Del.Super.1990); *Diaz v. State*, 508 A.2d 861, 864 (Del.1986).

**4.** *See, e.g., Taylor v. Horn*, 504 F.3d 416, 430 (3d Cir.2007); *Jermyn v. Horn*, 266 F.3d 257, 283 (2001).

**5.** Title 11 *Del.C.* § 404(a).

**6.** 420 U.S. 162, 170, 173, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

**7.** 51 A.3d 416 (Del.2012).

**8.** *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001) (quoting *Drope v. Missouri*, 420 U.S. 162, 173, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)).

*Kostyshyn* relies in part on *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), in which the Court compared the standard of competency to stand trial to the standard for pleading guilty. *Godinez* at n. 12 states: "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. . . . The purpose of the 'knowing and understanding' inquiry is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." (Internal citations omitted.)(Emphases in the original). This passage underscores the different issues involved in competency proceedings and guilty plea proceedings.

**9.** *State v. Shields*, 593 A.2d 986, 1010 (Del.Super.1990) (citing *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1974)).

competency, not guilt or innocence or the existence of any element of a crime.[10] Competency is a fact-sensitive inquiry that takes into account the totality of the circumstances.[11]

■ **Evidence.** At the hearing, the State presented expert testimony from a psychiatrist and a psychologist. Stephen Mechanick, M.D., is Chief, Department of Psychiatry at Bryn Mawr Hospital in Bryn Mawr, Pennsylvania. He interviewed Defendant at DPC May 29, 2012. Charlotte M. Selig, Ph.D., is a licensed psychologist working at DPC. She interviewed Defendant at various times between May 4, 2012 and July 17, 2012. Both Dr. Mechanick and Dr. Selig found Defendant competent to stand trial on the charged offenses.

The defense presented the expert testimony of Susan E. Rushing, M.D., J.D. Dr. Rushing is a forensic psychiatrist working as an assistant professor in the Department of Psychiatry at the University of Pennsylvania. She interviewed Defendant May 26, 2012 at DPC. Dr. Rushing found Defendant incompetent to stand trial for capital murder, which in her opinion requires a higher degree of reliability than is required for non-capital murder.

During the interviews, the mental health experts used among other things the McGarry criteria or questions, the standard tool used in Delaware and many other jurisdictions to help determine competency.[12] Dr. Mechanick and Dr. Selig use descriptive terms to present their conclusions. Dr. Rushing assigns one of five levels of impairment to each response, ranging from "not impaired" to "severe impairment." The McGarry findings are presented here in summary fashion.

**1. Ability to appraise the legal defenses available.** Dr. Mechanick found little, if any, impairment on this issue because Defendant understood that he could not present his videotape theory if he had no evidence of the alleged falsification. He also understood that accident is a viable defense to murder. Defendant said that he thought Chief Anderson was the man who had been sending him objectionable text messages, not a police officer. Dr. Mechanick assessed this to mean that Defendant had some understanding of the charge of Resisting Arrest with Force or Violence. Dr. Selig found that Defendant understood that other defenses are available to him if he could not prove that the police and Mr. Johnson falsified the videotape. In contrast, Dr. Rushing found that Defendant did not understand the possible defenses to murder or the nature of the charge of shooting at a police officer.

**2. Level of manageable behavior.** The experts found that Defendant managed his behavior throughout the interviews.

**3. Quality of relating to attorney.** Dr. Mechanick testified that Defendant's paranoia makes him a difficult but not impossible client. Dr. Selig found that although Defendant maintains his version of events he is able to discuss other defense options. She concluded that with patience and support Defendant can work with his attorneys. According to Dr. Rushing, Defendant holds paranoid beliefs that Mr. Johnson is paid for his collusion with the State and that Mr. Johnson refuses to locate exculpatory evidence such as certain text messages (which are not known to exist). Dr. Rushing's opinion is that these paranoid thoughts will severely

---

**10.** *Diaz v. State,* 508 A.2d at 863–64.

**11.** *State v. Shields,* 593 A.2d at 1005.

**12.** *Shields* at n. 23.

impair Defendant's ability to relate to Mr. Johnson.

**4. Ability to plan legal strategy.** Dr. Mechanick stated that Defendant is able to talk to his attorneys and plan a legal strategy. Dr. Selig reported that when Defendant learns to trust a person he can discuss various defense strategies, including mental state defenses, plea negotiations and challenging the elements of the charged offenses. Dr. Rushing found a moderate level of impairment based on Defendant's paranoid beliefs.

**5. Ability to appraise the role of participants in the court room.** The experts found that Defendant understands these facts.

**6. Understanding of court procedures.** In his interview with Dr. Mechanick, Defendant described court procedures with relative accuracy. Dr. Selig stated the Defendant has sufficient factual and rational understanding of the proceedings. Dr. Rushing found mild impairment, which she believed could be improved by education.

**7. Appreciation of the charges.** All three experts found that Defendant understood some of the charges but that he could not recall all 24 charges. They also found that Defendant is capable of learning about and comprehending the charges.

**8. Appreciation of the range and nature of the penalties.** Dr. Mechanick found Defendant to be aware of the death penalty and manslaughter, which Dr. Mechanick interpreted to mean that he understood some of the possibilities. Dr. Selig found that Defendant knew he could receive death or life imprisonment for murder and that he knew there were numerous other charges against him. Dr. Rushing assigned a mild impairment because Defendant believed that he would be either exonerated or given the death penalty, and was not aware of any other possibilities.

**9. Ability to appraise the likely outcome.** There was consensus that Defendant understands the possibility of a death sentence. He believes this is the most likely outcome because of the videotape.

**10. Capacity to disclose to the attorney available pertinent facts surrounding the offense.** The experts found no impairment here except for Defendant's insistence that he received threatening and demeaning text messages.

**11. Capacity to challenge prosecution witnesses realistically.** Dr. Mechanick found nothing to show that Defendant is unable to plan a legal strategy with his attorneys. Dr. Selig did not specifically address this question. Dr. Rushing found moderate impairment because Defendant will have difficulty challenging the State's witnesses in realistic fashion.

**Dr. Mechanick's conclusions.** Dr. Mechanick reported that Defendant's medical records during his residence at DPC do not show psychiatric problems. Defendant has been evaluated and monitored by a prison psychiatrist and prison mental health staff, who have not observed psychotic symptoms, and Defendant is not taking antipsychotic medication. Dr. Mechanick stated that if, as it appears, Defendant has fixed, unrealistic beliefs about his attorneys, Defendant has Delusional Disorder, Persecutory Type, which is a psychosis. Nevertheless, Dr. Mechanick finds Defendant competent to stand trial.

**Dr. Selig's conclusions.** Dr. Selig also found Defendant to be competent but disagrees with Dr. Mechanick's diagnosis because she did not find Defendant to be delusional when she met with him and she has not seen records showing previous delusions. Because Defendant has a rigid self-view which is inconsistent with the

murder of Connie Breeding, he may have processed his memory in a way that does not threaten his self-image. Dr. Selig diagnosed Defendant with Anxiety Disorder Not Otherwise Specified and, as the primary hurdle in terms of competency, Paranoid Personality Disorder.

The paranoia can translate into a fixed mistrust of other people, such as Defendant manifests toward Mr. Johnson. While acknowledging that Williamson presents difficulties relating to his attorneys, Dr. Selig observed his "flexibility and willingness" to discuss various defenses. She concludes that he has adequate cognitive understanding and needs time and patience in order to assist his attorneys.

**Dr. Rushing's conclusions.** Dr. Rushing found that Defendant's inability to trust and relate to his attorneys renders him incompetent to stand trial, particularly in a capital case. She believes that a higher degree of reliability should be applied in a competency hearing in a capital case. Dr. Rushing found that Defendant did not understand the various defenses available to him or the full range of penalties he could receive. Although appropriate classes at DPC may help him cognitively, Dr. Rushing's opinion is that the paranoia towards his attorneys will persist.

Oral argument was heard following the hearing. The defense based its argument primarily on Dr. Rushing's theory that a higher standard of reliability is required for a finding of competency in capital cases because death is irrevocable. For this reason, greater precautions are necessary in capital cases. The defense acknowledged that Williamson understands the roles of the people in the courtroom and that he is charged with capital murder.

The defense argued that Dr. Rushing rightly compared the decision to impose a death sentence to a medical decision in a life and death situation.

However, as the State pointed out, the medical crisis described by Dr. Rushing entails a risk of immediate risk of death where medical decisions must be made on the spot. This is not analogous to a capital murder case in Delaware where protections are built into every aspect of the proceedings [13] and a convicted defendant has the opportunity to challenge his death sentence in both state and federal courts. A patient who dies in a medical crisis does not have extended protections or any chance for reversal. There is no authority to support the defense position, and assuming that there was, a state trial court is not the right venue for amending federal and state precedent on constitutional issues.

The State also argued that both Delaware courts and federal courts apply the basic standard established in *Dusky v. United States*.[14] As discussed above, *Dusky* is alive and well. It is cited as the general standard whenever competency issues arise in both Delaware courts and federal courts.

The defense also argued that replacing Mr. Johnson with a different lawyer would not settle competency issues because Defendant would bring his belief about the altered videotape to any defense relationship, which already impedes not only Mr. Johnson but also Mr. Robinson. Although Defendant's paranoid thoughts about the videotape and Mr. Johnson are entwined, I accept that those thoughts would persist based on the expert testimony that the idea of murder does not comport with Defendant's image of himself as exemplified

---

13.  Title 11 *Del.C.* § 4209.

14.  362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

in idealized figures such as Roy Rogers, which he shared with Dr. Selig.

The defense pointed out that the United Supreme Court has broken with precedent in holding that under the Eighth Amendment mentally retarded defendants and juvenile defendants may not be given the death penalty.[15] These holdings were reached under the proportionality analysis that is constitutionally required in capital cases. The case at bar does not present an Eighth Amendment claim.

During the two-day hearing, I observed Defendant's demeanor. He watched the proceedings and paid attention to the testimony. He conducted himself appropriately and never raised his voice or spoke out of turn. Nor did his attention wander; he wanted to observe the proceedings. At times, Defendant spoke appropriately with his lawyers, and he displayed no antagonism or other inappropriate conduct in the courtroom.

The State has met its burden of showing that Defendant is competent. I conclude that Defendant, despite his paranoid beliefs, has both the cognitive and mental capacity to stand trial. He knows he has been charged with capital murder and other serious crimes. He understands there are various defenses to murder and that he has no evidence to support his theory about falsified videotapes. He knows that a jury will decide whether or not he is guilty. He knows that he may receive the death penalty if he is convicted of capital murder as charged and that he may receive a lesser sentence if he is convicted differently.

Based on the evidence presented, I find Dr. Mechanick to be correct in his conclusion that Defendant apparently has delusions about both the videotape and Mr. Johnson, but that he is cognitively and mentally able to set those beliefs aside in order to consider and proceed on an alternative defense. Dr. Mechanick said that Defendant is a difficult client, but not an impossible one. I also agree with Dr. Selig that Defendant is capable of learning more about legal strategy, which will improve the attorney/client relationship.

Ronald Williamson is competent to stand trial, and the case will proceed to trial on October 29, 2012, as scheduled.

**IT IS SO ORDERED.**

---

15. *See, respectively, Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) and *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).