IN THE SUPREME COURT OF THE STATE OF DELAWARE

MANUEL SALABERRIOS,     §
    §    No. 248, 2016
    Defendant Below,     §
    Appellant,     §    Court Below–Superior Court of
    §    the State of Delaware
    v.     §
    §    Cr. ID No. 1405016171
   STATE OF DELAWARE,     §
    §
    Plaintiff Below,     §
    Appellee.     §

Submitted: October 28, 2016
Decided: January 20, 2017

Before **STRINE**, Chief Justice; **VAUGHN** and **SEITZ**, Justices.

## **ORDER**

This 20th day of January 2017, having considered the appellant's brief under Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response, it appears to the Court that:

(1) In May 2014, the appellant, Manuel Salaberrios, and another man, Scott Kuntz, were incarcerated at the Central Violation of Probation Center (CVOP) near Smyrna, Delaware. On May 19, 2014, the two men were in the CVOP's housing area during free time when Salaberrios struck Kuntz in the face. The incident was recorded by a CVOP security camera. Following the incident, Kuntz was examined by a registered nurse in the CVOP's medical unit. The nurse

noted a laceration on the inside of Kuntz' lower lip and some swelling. Kuntz told the nurse that he was not in pain, and he declined medication for the injury.

(2) As a result of the incident, Salaberrios was indicted in June 2014 on one count of assault in a detention facility for having intentionally caused physical injury to Kuntz.[1] On December 12, 2014, a Superior Court jury convicted Salaberrios of attempted assault in a detention facility as a lesser-included offense of assault in a detention facility.[2] At sentencing on April 29, 2016, the Superior Court declared Salaberrios a habitual offender and sentenced him to a mandatory minimum of eight years at Level V incarceration followed by six months at Level IV. This is Salaberrios' direct appeal.

(3) On appeal, Salaberrios' appellate counsel has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26(c).[3] Appellate counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues in Salaberrios' case. Appellate counsel has advised the Court that he provided Salaberrios with a copy of the motion to withdraw, the no-merit brief and appendix in draft form, and a letter requesting that Salaberrios

---

[1] *See* 11 *Del. C.* § 1254(a) ("Any person who, being confined in a detention facility, intentionally causes physical injury to . . . any other person confined in a detention facility . . . shall be guilty of [assault in a detention facility].")

[2] *See* 11 *Del. C.* § 531(2) ("A person is guilty of an attempt to commit a crime if the person . . . [i]ntentionally does or omits to do anything which, under the circumstances as the person believes them to be, is a substantial step in a course of conduct planned to culminate in the commission of the crime by the person.").

[3] Salaberrios was represented by different counsel at trial.

2

send him written points for the Court's consideration. Salaberrios sent written points to appellate counsel. The points are included in the brief. The State has responded to the no-merit brief, Salaberrios' written submission, and has moved to affirm the Superior Court's judgment.

(4) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[4] Also, the Court must conduct its own review of the record and determine "whether the appeal is indeed so frivolous that it may be decided without an adversary presentation."[5] In this case, having conducted "a full examination of all the proceedings" and found "no nonfrivolous issue for appeal,"[6] the Court is satisfied that Salaberrios' appellate counsel made a conscientious effort to examine the record and the law and properly determined that Salaberrios could not raise a meritorious claim on appeal.

(5) The record reflects that, on the first day of trial, the prosecutor asked the Superior Court to conduct a colloquy with Salaberrios on his decision to reject the State's plea offer. The prosecutor also indicated that the State would be

---

[4] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[5] *Penson v. Ohio*, 488 U.S. at 81.
[6] *Id.* at 80.

requesting a jury instruction on attempted assault in a detention facility as a lesser-included offense of assault in a detention facility.

(6)     The State's plea offer required Salaberrios to plead guilty to assault in a detention facility, which has a two-year mandatory minimum sentence of incarceration.[7]  As part of the offer, the State agreed that it would not seek habitual offender sentencing and that it would recommend that the court impose no more than three years of incarceration.

(7)     The Superior Court conducted a colloquy with Salaberrios about the plea offer and the potential consequences of accepting and rejecting the plea.  At the conclusion of the colloquy, the court took a recess to give Salaberrios extra time to consult with his trial counsel and consider the offer.  An excerpt from the trial transcript reflects the following exchange.

> TRIAL JUDGE:  All right.  And the State's charged you with assault in a detention facility, and apparently thinks that because of your criminal history, you're going to qualify for sentencing as a habitual offender.  They've told you that, I assume; right?
>
> SALABERRIOS:  Yes, Your Honor.
>
> TRIAL JUDGE:  And has [your trial counsel] gone over the fact that if you – if this trial doesn't go the way you'd like it to go and you're convicted, the State is going to play its card that you're habitual, and then they're going to force me to impose an eight-year jail sentence.  And what I want to assure you of is if this doesn't go right today, I have no discretion.  Assuming you qualify for habitual, that is, you

---

[7] 11 *Del. C.* § 1254(a).

4

have three prior felony convictions. . . . I have to impose an eight-year sentence. I have no discretion. I have no choice. . . . Okay?

SALABERRIOS: Okay.

* * *

TRIAL JUDGE: Now, look, you're standing here. You've got two guards behind you and a bailiff here. Do you want a couple of minutes to think about this?

SALABERRIOS: Yes, Your Honor.[8]

After a short recess, Salaberrios' trial counsel informed the court that Salaberrios wanted to proceed to trial.

(8) At the start of trial, Salaberrios' trial counsel moved to dismiss the indictment, arguing that the State could not proceed without a witness who could testify "as to whether or not there was actually something going on between [Salaberrios and Kuntz] or if they were just fooling around or anything like that."[9] The Superior Court denied the motion, ruling that "[t]he State can proceed and try its case however it can try its case."[10] In its case in chief, the State introduced the video footage from the CVOP's security camera, the testimony of a correctional officer who was working at the CVOP on the date of the incident, and the testimony of the nurse who examined Kuntz.

---

[8] Trial Tr. at 8–13 (Dec. 11, 2014).
[9] *Id.* at 14.
[10] *Id.*

5

(9) Following the jury verdict on December 12, 2014, the Superior Court ordered a presentence investigation and scheduled sentencing for March 20, 2015. On January 23, 2015, the State filed a motion to declare Salaberrios a habitual offender.

(10) On December 19 and December 29, 2014, Salaberrios submitted *pro se* letters informing the Superior Court that he was hearing voices and having other symptoms of mental illness for which he needed medical treatment. On March 4, 2015, the Superior Court ordered that Salaberrios receive a mental health evaluation. A few days later, the court ordered that further proceedings—such as Salaberrios' sentencing—should be stayed until the court received the report from the mental health evaluation.

(11) The Superior Court record includes the March 13, 2015 mental health evaluation report submitted by a licensed psychologist affiliated with the Department of Correction Bureau of Correctional Healthcare. The report states that the psychologist evaluated Salaberrios on March 12, 2015 "for diagnostic and treatment planning purposes." The report provides a diagnosis based on Salaberrios' "current mental status" and makes recommendations for treatment during Salaberrios' incarceration.

(12) In his points on appeal, Salaberrios asks the Court to consider that (1) the jury should not have been permitted to consider the lesser-included offense of

attempted assault in a detention facility; (2) there was insufficient evidence to support the jury's verdict; (3) he was not competent to stand trial; (4) he was denied the right to confront his accuser; (5) the prosecution withheld witnesses who would have provided testimony favorable to the defense; (6) the jury instructions contained errors; and (7) his trial counsel was ineffective. For the following reasons, the Court concludes that Salaberrios' points are without merit or are not subject to review on direct appeal.

(13) Salaberrios contends that the Attorney General's decision to bring a criminal prosecution against him was motivated by the personal animus of a correctional officer. The claim is without merit. A prosecutor has broad discretion to bring criminal charges "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute."[11] In this case, Salaberrios has not substantiated, and the record does not reflect, that the decision to prosecute him for assault in a detention facility was motivated by the personal animus of a correctional officer.

(14) Salaberrios contends that the State's decision not to call Kuntz to testify was a violation of his constitutional right to confront his accuser. Also, Salaberrios contends that the State "withheld information that could help the [defense]" when the prosecutor did not call two correctional officers to testify,

---

[11] *Albury v. State*, 551 A.2d 53, 61 (Del. 1988) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)).

even though the officers were included on the State's witness list. Both claims are without merit. The Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine an adverse witness at trial.[12] It does not require the State to call any particular individual to testify as a witness, [13] even when the individual is listed on the State's list of potential witnesses.[14] Salaberrios has not demonstrated that the State's decision not to call the two correctional officers in its case-in-chief constituted a failure to disclose exculpatory or impeaching information to the defense.[15] The State did not suppress the identity of the two officers.[16] Salaberrios knew of the officers before trial and could have called them to testify for the defense.

(15) Salaberrios contends that the Superior Court should not have granted the State's request to instruct the jury on attempted assault in a detention facility, and that the jury instructions given by the court contained errors. The claims are without merit. The Superior Court is required to provide a lesser-included offense

---

[12] *Reed v. State*, 1994 WL 100083, at *2 (Del. Mar. 23, 1994) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity for cross-examination." (quoting *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974))).

[13] *Gordon v. State*, 1990 WL 168256, at*2 (Del. Sept. 17, 1990) (citing *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985)).

[14] *See e.g., Charbonneau v. State*, 904 A.2d 295, 302 (Del. 2006) (providing that the State's list of potential witnesses did not obligate the State to call all those listed).

[15] In *Brady v. Maryland*, the United States Supreme Court held that the State's failure to disclose material exculpatory or impeaching evidence to the defense is a violation of the Fourteenth Amendment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[16] *Id.* To constitute a *Brady* violation, the evidence at issue must have been suppressed by the State. *Robinson v. State*, 2016 WL 5957289, at **2 (Del. Oct. 13, 2016) (citing *Norman v. State*, 968 A.2d 27, 30 (Del. 2009)).

instruction upon request by either party if the evidence presented at trial is such that a jury could rationally find the defendant guilty of the lesser-included offense and acquit the defendant of the greater offense.[17]  In this case, the Superior Court properly granted the State's request to instruct the jury on attempted assault in a detention facility as a lesser-included offense.  The evidence at trial supported the instruction.  We have reviewed the instructions given by the court and can find no error.  As required, the instructions as a whole provide a correct statement of the law, are informative, and are not misleading.[18]

(16)  Salaberrios contends that there was insufficient evidence to convict him of assault in a detention facility.  The claim is without merit.  Salaberrios was not convicted of assault in a detention facility.  He was convicted of attempted assault in a detention facility.  When evaluating a sufficiency of the evidence claim, the Court must ask if, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[19]  In this case, to find Salaberrios guilty of attempted assault in a detention facility, the jury was required to find, beyond a reasonable doubt, that Salaberrios took a substantial step to commit assault in a

---

[17] *Brown v. State*, 2013 WL 434054, at *3 (Del. Feb. 4, 2013) (citing *Wiggins v. State*, 902 A.2d 1110, 1113 (Del. 2006)).
[18] *Rybicki v. State*, 119 A.3d 663, 675 (Del. 2015).
[19] *Goode v. State*, 136 A.3d 303, 314 (Del. 2016).

detention facility, that is, to cause physical injury to Kuntz.[20] The evidence in this case included the video footage from the CVOP security camera showing Salaberrios striking Kuntz in the face. The evidence was sufficient to find Salaberrios guilty beyond a reasonable doubt of attempted assault in a detention facility.

(17) Salaberrios contends that he was "not mentally fit" to stand trial. "To be competent to stand trial, a defendant must have 'a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and must possess 'a rational as well as factual understanding of the proceedings against him.'"[21] The Superior Court must inquire into a defendant's competence when there is a reason to doubt the defendant's competence to stand trial.[22] In this case, the trial transcript does not reveal any indication that Salaberrios was unable to consult with his trial counsel with a reasonable degree of rational understanding or that he did not have a rational and factual understanding of the proceedings against him. On direct appeal, in the absence of any indication in the trial transcript that Salaberrios not competent to stand trial or that the Superior Court had a reason to doubt his competence, Salaberrios' claim that he was not competent to stand trial is without merit.

---

[20] *Supra* notes 1, 2.
[21] *Kostyshyn v. State*, 51 A.3d 416, 420 (Del. 2012) (internal citations omitted).
[22] *Id.*

10

(18) Salaberrios contends that his trial counsel "neglected to let the court know about his mental issues" and that counsel failed to make sure he understood "what was meant by lesser included." Salaberrios also contends that his trial counsel was not prepared to defend against the lesser-included offense of attempted assault in a detention facility. The Court does not consider claims of ineffective assistance of counsel on direct appeal.[23] Salaberrios may bring those claims in a motion for postconviction relief filed in the Superior Court.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[23] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

11